187 F.3d 1045 (9th Cir. 1999)
 BLUE CROSS OF CALIFORNIA, Plaintiff-Appellant,
v.
ANESTHESIA CARE ASSOCIATES MEDICAL GROUP, INC.,Defendant-Appellee.
BLUE CROSS OF CALIFORNIA, Plaintiff-Appellant,
v.
ANESTHESIOLOGY CONSULTANTS OF CONTRA COSTA COUNTY MEDICAL GROUP, INC., Defendant-Appellee.
BLUE CROSS OF CALIFORNIA, Plaintiff-Appellant,
v.
KERN BONE AND JOINT SPECIALISTS, INCORPORATED, Defendant-Appellee.
BLUE CROSS OF CALIFORNIA, Plaintiff-Appellant,
v.
BEAVER MEDICAL CLINIC, INC., Defendant-Appellee.
 No. 98-15258 No. 98-15257 No. 98-15843 No. 98-55884
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted March 12, 1999
Filed August 27, 1999
 
 James H. Fleming, Fleming & Phillips, Walnut Creek, California, for the petitioner-appellant.
 Edward P. Sangster, McKenna & Cuneo, San Francisco, California, for the respondents-appellees.
 Appeals from the United States District Court for the Northern District of California Maxine M. Chesney, District Judge, Presiding.D.C. No. CV 97-01654 MMC, CV 97-01655 MMC.
 Appeal from the United States District Court for the Eastern District of California Garland E. Burrell, Jr., District Judge, Presiding. D.C. Nos. CV-97-00841 GEB
 Appeal from the United States District Court for the Central District of California Consuelo B. Marshall, District Judge, Presiding. D.C. No. CV 97-03425 CBM.
 Before: John T. Noonan and A. Wallace Tashima, Circuit Judges, and Jane A. Restani, Court of International Trade Judge.* Opinion by Judge Tashima
 OPINION
 TASHIMA, Circuit Judge:
 
 
 1
 We are asked to determine whether the claims of medical providers against a health care plan for breach of their provider agreements are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. S 1001 et seq. We conclude that the fact that these medical providers obtained assignments of benefits from beneficiaries of ERISA-covered health care plans does not convert their claims into claims for benefits under ERISA-covered health care plans, and that the medical providers' claims do not otherwise fall within ERISA's express preemption clause, S 514(a), 29 U.S.C. S 1144(a). We, therefore, affirm the judgments of the district courts dismissing these actions for lack of subject matter jurisdiction.
 
 I. FACTUAL AND PROCEDURAL BACKGROUND
 A. Medical Provider Agreements
 
 2
 This litigation arises from a fee dispute between four medical providers -- Anesthesia Care Associates Medical Group, Inc. ("Anesthesia Care"), Anesthesiology Consultants of Contra Costa County Medical Group, Inc. ("Anesthesiology Consultants"), Kern Bone and Joint Specialists, Incorporated ("Kern Bone"), and Beaver Medical Clinic, Inc. ("Beaver Medical") (collectively "Providers") -- who participate in the Prudent Buyer Plan, a medical care plan offered by Blue Cross of California ("Blue Cross"). As of July, 1997, the Prudent Buyer Plan had more than two million members; approximately 39 percent of these members were provided the Prudent Buyer Plan by their private employers as part of the employees' health benefit coverage, and approximately 61 percent were either individual subscribers or were provided the Plan by government employers or special California state programs.
 
 
 3
 As part of the Prudent Buyer Plan, Blue Cross enters into a standardized contract, the Participating Physician Agreement (the "provider agreement"), with physicians. More than 30,000 physicians, including those affiliated with the Providers, have entered into one or the other of two versions of the provider agreement.[1] Under these provider agreements, Blue Cross agrees to identify the participating physicians in the information materials it distributes to members of the Prudent Buyer Plan and to direct its subscribers to these physicians. In turn, the physicians agree to accept payment from Blue Cross for services rendered to Prudent Buyer Plan subscribers according to specified fee schedules.
 
 
 4
 Under the Prudent Buyer Plan, the patient is largely removed from the medical billing and payment process. In the provider agreements, the physician agrees to "seek, accept and maintain evidence of assignment for the payment of Medical Services provided to Members by PHYSICIAN under the applicable Prudent Buyer Benefit Agreement." (Provider Agreements S 4.2.) As to payment, the provider agreements state that "PHYSICIAN shall seek payment only from BLUE CROSS for the provision of Medical Services," except pursuant to specified exceptions. (Id. SS 6.1-6.10.) The provider agreements also state that "PHYSICIAN agrees to accept the fee schedule as provided in Exhibit B, attached and made part of this Agreement or PHYSICIAN's covered billed charges, whichever is less, as payment in full for all Medical Services provided to Members." (Id. S 6.6.)[2] The provider agreements further provide for review of new fee schedules by the Blue Cross Physician Advisory/Relations Committee prior to adoption.[3]
 
 
 5
 The provider agreements include arbitration provisions, in which the parties agree to submit disputes concerning the terms of the provider agreement to arbitration. The agreements specify that California law governs their construction and enforcement. (Id. S 13.10.) Each of the Providers has some patients who are enrolled in the Prudent Buyer Plan as part of a health benefit plan covered by ERISA.
 
 B. Proceedings
 
 6
 The dispute between the Providers and Blue Cross relates to changes in the fee schedules that Blue Cross allegedly made in 1993, 1994, and 1995. Viewing their claims as rais- ing common questions of law and fact, in March, 1997, the Providers submitted a joint written demand for arbitration of this dispute in a consolidated arbitration proceeding for themselves and other similarly situated physicians. Blue Cross was amenable to arbitration, but only to individual arbitrations with each provider, not to a consolidated class arbitration.
 
 
 7
 In May, 1997, Blue Cross filed petitions to compel arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. S 4, against each of the Providers in the United States District Courts in California. In these petitions, Blue Cross asserted federal subject matter jurisdiction under ERISA and the FAA. Shortly thereafter, the Providers filed a joint class action complaint against Blue Cross in the California Superior Court for the City and County of San Francisco, alleging that Blue Cross had breached its provider agreements with the Providers by improperly amending the fee schedules, and had violated its implied duty of good faith and fair dealing under California law.
 
 
 8
 On June 6, 1997, Blue Cross removed the Providers' state court action to the United States District Court for the Northern District of California. On November 21, 1997, the Northern District Court granted the Providers' motion to remand the removed action back to San Francisco Superior Court and to dismiss Blue Cross' petitions to compel individual arbitration with Anesthesia Care and Anesthesiology Consultants for lack of subject matter jurisdiction. On April 1 and 6, 1998, the Central District and Eastern District Courts, respectively, granted Beaver Medical's and Kern Bone's motions to dismiss Blue Cross' petitions to compel arbitration for lack of subject matter jurisdiction.[4]
 
 
 9
 The federal district courts' decisions dismissing Blue Cross' petitions rejected Blue Cross' argument that, by virtue of the assignments of benefits under the Prudent Buyer Plan to the Providers from their patients, some of whom had their subscriptions in the Prudent Buyer Plan through ERISAcovered health benefit plans, the Providers' claims fell within ERISA's civil enforcement provision, S 502(a), 29 U.S.C. S 1132(a).
 
 
 10
 The district court for the Northern District also rejected Blue Cross' argument that the Providers' claims "relate[d] to" an ERISA-covered plan under S 514(a) of ERISA, 29 U.S.C. S 1144(a), ERISA's express preemption clause. The only other federal statute invoked in Blue Cross' petitions was the FAA. Because the FAA does not provide an independent basis for jurisdiction, see Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25 n.32 (1983), the district courts dismissed the petitions for lack of subject matter jurisdiction. Blue Cross appeals each of the federal district court's decisions dismissing its petitions to compel arbitration. We have jurisdiction over these appeals pursuant to 28 U.S.C. S 1291, and we affirm the judgments of the district courts.
 
 II. STANDARD OF REVIEW
 
 11
 We review the district courts' decisions regarding ERISA preemption ofstate law de novo, see Operating Eng'rs Health & Welfare Trust Fund v. JWJ Contracting Co., 135 F.3d 671, 675 (9th Cir. 1998); WSB Elec., Inc. v. Curry , 88 F.3d 788, 791 (9th Cir. 1996), as we review questions of subject matter jurisdiction de novo. See Geweke Ford v. St. Joseph's Omni Preferred Care Inc., 130 F.3d 1355, 1357 (9th Cir. 1997).
 
 III. DISCUSSION
 
 12
 It is well established that the FAA does not, on its own, provide a basis for federal question jurisdiction. See Southland Corp. v. Keating, 465 U.S. 1, 15 n.9 (1984); Moses H. Cone, 460 U.S. at 25 n.32; Kehr v. Smith Barney, Harris Upham & Co., 736 F.2d 1283, 1287 (9th Cir. 1984) (S 4); Garrett v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 7 F.3d 882 (9th Cir. 1993) (S 10). Rather, S 4 of the FAA "provides for an order compelling arbitration only when the federal district court would have jurisdiction over a suit on the underlying dispute; hence, there must be diversity of citizenship or some other independent basis for federal jurisdiction before the order can issue." Moses H. Cone, 460 U.S. at 25 n.32.
 
 
 13
 Blue Cross argues that the Providers' claims are preempted by ERISA, which thereby provides a basis for subject matter jurisdiction, because they fall within ERISA's civil enforce- ment provision, S 502(a), 29 U.S.C. S 1132(a), and express preemption clause, S 514(a), 29 U.S.C. S 1144(a). We hold that the Providers' claims are not preempted by ERISA; therefore, that the district courts properly dismissed Blue Cross' petitions for lack of subject matter jurisdiction.[5]
 
 A. ERISA S 502(a)
 
 14
 Blue Cross' overriding contention is that the Providers' right to receive reimbursement from Blue Cross depends upon the assignment of the right to benefits for payment for medical services from their patients, some of whom are beneficiaries of ERISA-covered health plans, and therefore that the Providers' claims regarding the fee provisions in their provider agreements are claims for benefits under the terms of ERISA benefit plans and fall within S 502(a)(1)(B). We hold that the Providers' claims, which arise from the terms of their provider agreements and could not be asserted by their patient-assignors, are not claims for benefits under the terms of ERISA plans, and hence do not fall within S 502(a)(1)(B).
 
 
 15
 Under ERISA S 502(a)(1)(B), a civil action may be brought by an ERISA plan participant or beneficiary seeking to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. S 1132(a)(1)(B). Blue Cross contends that our decision in Misic v. Building Serv. Employees Health & Welfare Trust, 789 F.2d 1374 (9th Cir. 1986), is dispositive of our analysis under S 502(a). We disagree.
 
 
 16
 In Misic, a dentist rendered dental services to beneficiaries of an ERISA plan that provided dental benefits of 80 percent of the cost of their dental care. See id. at 1376. The beneficiaries assigned their rights to reimbursement to the dentist who in turn billed the plan directly. When the plan did not pay 80 percent of the dentist's bill, the dentist sued to recover the deficiencies in payment. See id. The court held that unlike pension benefits, which may not be assigned to others, see ERISA S 206(d), 29 U.S.C. S 1056(d), ERISA does not prohibit the assignment by a beneficiary of his or her right to reimbursement under a health care plan to the health care provider. See id. at 1377. The Misic court further held that because a health care provider-assignee stands in the shoes of the beneficiary, such a provider has standing to sue under S 502(a)(1)(B) to recover benefits due under the plan. Accordingly, as we later commented, Misic "affirmed the principle that ERISA preempts the state law claims of a provider suing as an assignee of a beneficiary's rights to benefits under an ERISA plan." The Meadows v. Employers Health Ins., 47 F.3d 1006, 1008 (9th Cir. 1995).
 
 
 17
 Misic does not address, much less control, the circumstances presented here. In Misic, the provider had no contractual agreement with his patient's health benefit plan, such as a provider agreement, specifying his fee entitlements. It is clear in Misic that the provider sought, as an assignee, to recover reimbursement due to his assignors under the terms of the benefit plan; indeed, the terms of the benefit plan were the provider's only basis for his reimbursement claim. Here, in contrast, the Providers and Blue Cross have executed provider agreements, and it is the terms of the provider agreements that Providers contend Blue Cross has breached. Indeed, the Providers are asserting contractual breaches, and related violations of the implied duty of good faith and fair dealing, that their patient-assignors could not assert: the patients simply are not parties to the provider agreements between the Providers and Blue Cross. The dispute here is not over the right to payment, which might be said to depend on the patients' assignments to the Providers, but the amount, or level, of payment, which depends on the terms of the provider agreements.
 
 
 18
 Blue Cross also argues that the reference in the provider agreements to "PHYSICIAN's covered billed charges " shows that the Providers' claims depend on the interpretation of the terms of the plan. As noted above, this phrase appears in version B of the provider agreements:
 
 
 19
 PHYSICIAN agrees to accept the fee schedule as provided in Exhibit B, attached to and made part of this Agreement, or PHYSICIAN's covered billed charges, whichever is less, as payment in full for all Medical Services provided to Members.
 
 
 20
 (Provider Agreement S 6.6.) But the Providers' claims arise from Blue Cross' alleged breach of the provider agreements' provisions regarding fee schedules, and the procedure for setting them, not what charges are "covered" under the Prudent Buyer Plan. The Providers' claims, therefore, do not rest upon this term of the Prudent Buyer Plan. Where the meaning of a term in the Plan is not subject to dispute, the bare fact that the Plan may be consulted in the course of litigating a state-law claim does not require that the claim be extinguished by ERISA's enforcement provision. Cf. Livadas v. Bradshaw, 512 U.S. 107, 123-25 (1994) (stating rule that need to refer to collective bargaining agreement did not bring claims within S301, the enforcement provision of the Labor-ManagementRelations Act ("LMRA"), 29 U.S.C. S 185).[6]
 
 
 21
 In view of the fact that, although beneficiaries of ERISA-covered plans have assigned their rights to reimbursement to the Providers, the Providers are asserting state law claims arising out of separate agreements for the provision of goods and services, we find no basis to conclude that the mere fact of assignment converts the Providers' claims into claims to recover benefits under the terms of an ERISA plan. Accordingly, we agree with the district courts that the Providers' claims do not fall within ERISA's enforcement provision.
 
 B. ERISA S 514
 
 22
 Blue Cross also argues that the Providers' claims are preempted by ERISA's express preemption clause, ERISA S 514(a), 29 U.S.C. S 1144(a), on the grounds that the Providers' claims will impose economic burdens on ERISA plans (and their beneficiaries), and that their claims implicate relationships regulated by ERISA. We find neither argument per- suasive.
 
 
 23
 ERISA's express preemption clause provides that ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan " governed by ERISA, with exceptions not relevant here. See ERISA 514(a), 29 U.S.C. S 1144(a). The Supreme Court's efforts at interpreting the "relate to" language in S 514(a) have yielded the following two-part test: "A law `relate[s] to' a covered employee benefit plan for the purposes ofS 514(a) `if it [1] has a connection with or [2] reference to such a plan.' " California Div. of Labor Standards Enforcement v. Dillingham Constr., 519 U.S. 316, 324 (1997) (quoting District of Columbia v. Greater Wash. Bd. of Trade, 506 U.S. 125, 129 (1992) (quoting Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96-97 (1983))).
 
 
 24
 Blue Cross argues that under the administrative services agreements it has with some ERISA plans, higher payments to the Providers under the provider agreements would be paid directly, dollar for dollar, by the ERISA plans. Blue Cross also notes that, in general, higher payments to providers will result in higher costs for ERISA plans, and increased copayment liability for ERISA beneficiaries. We conclude that, under New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 655 (1995), and DeBuono v. NYSA ILA Med. and Clinical Servs. Fund, 520 U.S. 806 (1997), the economic effects that the Providers' claims might have on ERISA plans are not sufficient for preemption to occur.
 
 
 25
 In Travelers, the Supreme Court held that a New York state law that required hospitals to collect surcharges, in addition to normal charges, from patients covered by commercial insurers, but not from patients insured by Blue Cross/Blue Shield plans, did not "relate to" employee benefit plans. See 514 U.S. at 649. The Court responded, in some detail, to arguments that these surcharges had the requisite "connection with" ERISA plans because they imposed economic costs on ERISA plans. See id. at 659-62. The Court noted that although the surcharges make Blue Cross plans more attractive as insurance alternatives and may affect a plan's choice of insurers, they have only an indirect economic influence and do not "bind plan administrators to any particular choice and thus function as a regulation of an ERISA plan itself." Id. at 659. The Court reasoned that the surcharges were not different than a wide array of other state laws, such as quality standards set by states for hospital services and workplace regulation, all of which will "indirectly affect what an ERISA or other plan can afford to get for its money." Id. at 660-61.
 
 
 26
 Only where the indirect economic impact of the state law is "acute," so as to force an ERISA plan to adopt a "certain scheme of substantive coverage or effectively restrict its choice of insurers," might a state law imposing only economic effects on ERISA plans be preempted under S 514(a). Id. at 668.
 
 
 27
 Relying on these principles, the Court in DeBuono held that a New York state tax imposed on hospitals did not "relate to" ERISA plans when it was imposed on hospitals owned by an ERISA plan. See 520 U.S. at 815-816. Even though the economic impact of the tax on the ERISA plan owned hospitals was "direct," the Court concluded that the tax was not preempted because its impact on the plans was, in relevant respects, no different than if the tax had been imposed on a hospital from which an ERISA plan purchased services. See id. at 816. The higher costs might have forced the plan to decide whether to cover a more limited range of services, or perhaps charge more to plan members, but those economic impacts were not acute in the sense identified in Travelers, and thus insufficient to require preemption. See id. at 816 & n.16. "Any state tax, or other law, that increases the cost of providing benefits to covered employees will have some effect on the administration of ERISA plans, but that simply cannot mean that every state law with such an effect is preempted by the federal statute." Id. at 816.
 
 
 28
 The Providers' state contract and implied covenant claims, if successful, may increase the costs that ERISA plans pay for medical benefits, which may, in turn, result in higher costs of benefits for employees, or a choice to reduce the range of coverage. Cf. id. at 816 (suggesting impact of increased rates for beneficiaries or more limited range of covered services does not justify preemption). But there is no contention here that the economic impact of these contractual claims will be so acute as to force an ERISA plan to adopt a certain scheme of substantive coverage. See Travelers, 514 U.S. at 668. Thus, under DeBuono and Travelers, the eco- nomic impact that may result from the Providers' claims against Blue Cross does not justify preempting the Providers' state law claims.
 
 
 29
 Blue Cross also argues that the Providers' state law claims encroach on relationships governed by ERISA. Blue Cross correctly points out that subsequent to Travelers, DeBuono, and Dillingham Construction, we have continued to rely on a "relationship" test to determine the scope of ERISA's express preemption clause, a test formulated in General Am. Life Ins. Co. v. Castonguay, 984 F.2d 1518, 1521-22 (9th Cir. 1993). See, e.g., Geweke Ford, 130 F.3d at 1358 (relying on Castonguay's "relationship" test). Under this test, we look to whether the state law encroaches on relationships regulated by ERISA, such as between plan and plan member, plan and employer, and plan and trustee. See Castonguay, 984 F.2d at 1521-22; Geweke Ford , 130 F.3d at 1358-59.
 
 
 30
 Blue Cross contends that under this test, the Providers' claims are preempted because: (1) they rely on the construction of terms in ERISA plans; (2) they are intertwined with beneficiaries' ERISA benefits; and (3) under one of Blue Cross' administrative service agreements, it is responsible for reviewing claim appeals of ERISA plan beneficiaries. The first contention has already been addressed by our discussion of ERISA's civil enforcement provision. The Providers' claims do not involve construction of the terms of ERISAcovered benefit plans. As for the second contention, because there is no claim that beneficiaries have not received their full benefits under the plans, or any argument that interpretation of the provider agreements will somehow work a change in the benefits to which beneficiaries will be entitled under ERISA-covered plans, the Providers' claims do not encroach on the relationship between beneficiary and plan.
 
 
 31
 The fact that Blue Cross may be responsible for reviewing claim appeals for one ERISA plan also does not suggest that the Providers' state contract claims against Blue Cross encroach on relationships governed by ERISA. Even if Blue Cross is viewed as an ERISA fiduciary in its handling of claim appeals, that still does not imply that the Providers' state law claims against it implicate ERISA-governed relationships. The Providers' claims concern only promises that Blue Cross made as a health care plan provider to its participating physicians. They do not touch on Blue Cross' fiduciary status, or any claims that a beneficiary may make against Blue Cross in that capacity.
 
 
 32
 Reference to the objectives of ERISA's express preemption clause confirms that the Providers' claims do not come within its scope. The Supreme Court stated that Congress' aims in passing ERISA's preemption provision were:
 
 
 33
 to ensure that plans and plan sponsors would be sub ject to a uniform body of benefits law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Govern ment . . . , [and to prevent] the potential for conflict in substantive law . . . requiring the tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction.
 
 
 34
 Travelers, 514 U.S. at 656-57 (quoting Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 142 (1990)). The "thrust of the pre-emption clause . . . was to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans." Id. at 657. But because the Providers' claims arise from contracts that a health care provider makes with its medical providers, the difficulties that Congress sought to avoid with ERISA's preemption clause are not implicated here. The state law that the Providers invoke does not create an alternative enforcement mechanism for securing benefits under the terms of ERISA-covered plans. And, as the Travelers decision illustrates, the economic effects that the Providers' claims might have on the plans does not imply that the claims interfere with the field of benefits law that Congress sought to occupy with ERISA. As with many state laws of general applicability, the Providers' state law claims thus have only a "tenuous, remote, or peripheral connection with covered plans," Travelers, 514 U.S. at 661 (internal quotation omitted), and therefore are not preempted. Hence, we conclude that the Providers' state law claims do not "relate to" an ERISA-covered employee benefit plan under S 514(a) of ERISA. Accordingly, the district courts properly dismissed Blue Cross' petitions to compel arbitration for lack of subject matter jurisdiction, and we need not address Blue Cross' argu- ments concerning the enforcement of the arbitration provisions in the provider agreements.
 
 IV. CONCLUSION
 
 35
 To summarize, we hold that the claims of the Providers against Blue Cross for the breach of the provider agreements and violation of implied covenants associated with those agreements do not fall within the scope of ERISA's enforcement provision, S 502(a), 29 U.S.C. S 1132(a), and do not otherwise "relate to" an ERISA plan within the meaning of ERISA's express preemption clause, S 514(a), 29 U.S.C. S 1144(a). Therefore, the respective district courts properly determined that they lacked subject matter jurisdiction over Blue Cross' petitions to compel arbitration.
 
 
 36
 The judgment of the district court in each of these cases is AFFIRMED.
 
 
 
 Notes:
 
 
 *
 The Honorable Jane A. Restani, United States Court of International Trade Judge, sitting by designation.
 
 
 [1]
 Beaver Medical and Kern Bone entered into the same version of the provider agreement ("version A"); Anesthesia Care and Anesthesiology Consultants entered into a different version ("version B"). Where there are differences in language between the two versions relevant to our discussion, those differences are noted.
 
 
 [2]
 Version A of the provider agreement does not include the word "covered."
 
 
 [3]
 Version A of the provider agreement states:
 Prior to April 1 of each year, BLUE CROSS shall publish a fee schedule which shall be effective on the following August 1. The fee schedule shall be reviewed for comment by the Blue Cross Physician Advisory Committee prior to adoption.
 (S 6.7.) Version B of the provider agreement states:
 Each year, BLUE CROSS shall publish the applicable fee sched ule and the date on which such fee schedule, if different from the existing schedule, shall become effective. The fee schedule shall be made available for comment by the Blue Cross Physician Relations Committee prior to adoption.
 (S 6.7.)
 
 
 [4]
 After these dismissals of Blue Cross' petitions by the federal courts, the Providers and Blue Cross filed cross-petitions to compel arbitration on a class and individual basis, respectively, in the remanded San Francisco Superior Court action. On July 14, 1998, the Superior Court granted the Providers' petition to compel class arbitration and denied Blue Cross' request to compel individual arbitrations. The state court, however, reserved for future determination certification of the class and issues concerning class administration.
 
 
 [5]
 We recognize that there is a substantial body of case law which holds that the existence of a federal question in the underlying dispute is not sufficient to create subject matter jurisdiction over a petition to compel arbitration under S 4 of the FAA, 9 U.S.C. S 4. See, e.g., Westmoreland Capital Corp. v. Findlay, 100 F.3d 263, 268-69 (2d Cir. 1996) (holding that neither S 4 of the FAA nor the federal character of the underlying dispute creates subject matter jurisdiction); Smith Barney, Inc. v. Sarver, 108 F.3d 92, 94 (6th Cir. 1997) ("Our cases have made clear . . . that the Federal Arbitration Act does not supply an independent basis for federal jurisdiction, nor does the federal nature of the underlying claims that were submitted to arbitration."); Prudential-Bache Secs., Inc. v. Fitch, 966 F.2d 981, 986-88 (5th Cir. 1992) (reasoning that, in view of the history of FAA and the well-pleaded complaint rule, nature of underlying dispute is not relevant to determining federal jurisdiction under FAA S 4); see also Kasap v. Folger Nolan Fleming & Douglas, Inc., 166 F.3d 1243, 1246-47 (D.C. Cir. 1999) (noting that weight of authority suggests that even where underlying dispute could have been brought in federal court, there is no federal jurisdiction under FAA S 4).
 If the Westmoreland doctrine were the established law in the Ninth Circuit, it would provide an additional basis to conclude that there is no subject matter jurisdiction over Blue Cross' petitions. Because we conclude, however, that federal question jurisdiction is lacking in the underlying dispute, we find it unnecessary to address whether we should embrace the Westmoreland construction of the S 4 of the FAA, an issue discussed neither by the parties nor the district courts in the cases at bench.
 
 
 [6]
 The Supreme Court has relied on decisions construing LMRA's civil enforcement provision, S 301, in construing ERISA's enforcement provision. See Metropolitan Life Ins. Co. v. Taylor , 481 U.S. 58, 64-65 (1987) (construing ERISA S 502(a) in accordance with LMRA S 301).