# STATE OF MICHIGAN

# COURT OF APPEALS

ADMINISTRATION SYSTEMS RESEARCH
CORPORATION INTERNATIONAL,

Plaintiff-Appellant,

v

DAVITA HEALTHCARE PARTNERS, INC.,
DVA RENAL HEALTHCARE, INC.,
PHYSICIANS DIALYSIS ACQUISITIONS,
INC., TOTAL RENAL CARE, INC., BLANCO
DIALYSIS LLC, IONIA DIALYSIS LLC, and
PORTOLA DIALYSIS LLC,

Defendants-Appellees.

UNPUBLISHED
November 16, 2017

No. 334902
Kent Circuit Court
LC No. 16-000804-CB

Before: HOEKSTRA, P.J., and STEPHENS and SHAPIRO, JJ.

PER CURIAM.

Plaintiff filed the present lawsuit in circuit court to enjoin arbitration that had been initiated by defendants before the American Health Lawyers Association ("AHLA"). Defendants filed a motion for summary disposition under MCR 2.116(C)(7), asserting that the circuit court case should be dismissed and the matter submitted for arbitration. Plaintiff filed a motion for partial summary disposition under MCR 2.116(C)(10), arguing, as relevant to this appeal, that the parties' dispute fell outside the scope of their arbitration agreement. The trial court's granted summary disposition in favor of defendants under MCR 2.116(C)(7), denied plaintiff's motion for partial summary disposition pursuant to MCR 2.116(C)(10), and ordered the parties to submit to arbitration. Plaintiff now appeals as of right. Because the trial court properly concluded that defendants' claims are subject to arbitration, we affirm.

Defendants are organizations involved in providing dialysis treatment. Plaintiff is a third-party claims administrator for self-funded employee health benefit plans ("the plans"), some of which are governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 USC 1001 *et seq*. Relevant to the present case, plaintiff entered into two

-1-

Provider Agreements with defendants.[1] Under the Provider Agreements, defendants are network providers and, pursuant to the master payment schedules attached to the Provider Agreements, their rate of payment is set at 65% of their "established pricing schedule in effect on the date of service . . . ." Generally speaking, as the claims administrator, plaintiff does not pay the claims, but instead arranges for the plans to compensate defendants for their services.

Notably, the Provider Agreements contain a dispute resolution clause, which provides for arbitration in certain circumstances. Specifically, § 8.14 states:

> **Dispute Resolution** The parties shall make reasonable attempts to resolve any and all disputes arising hereunder through informal discussions. In the event a dispute which the parties cannot resolve involves a provision or circumstance covered by ERISA, the parties agree that the dispute resolution procedures and remedies available under ERISA will be their sole recourse. If the dispute is one for which ERISA does not provide a dispute resolution procedure and remedy, or the dispute falls outside of ERISA, then the parties agree their sole recourse shall be to submit the matter to binding arbitration conducted in Grand Rapids, Michigan, according to the Rules and Procedures of the Dispute Resolution Service of the NHLA, using a single arbitrator. Arbitration fees shall be borne equally by the parties.

In 2015, defendants filed a demand for arbitration before the AHLA.[2] Substantively, defendants claimed that, in relation to kidney dialysis services provided in Grand Rapids, they had submitted claims to plaintiff for payment by the plans. According to defendants, the services were covered and partially paid by the plans, but the plans did not pay the full amount that defendants were entitled to under the master payment schedules. In total, a sum of approximately $6 million remained unpaid.

In the demand for arbitration, defendants asserted claims for breach of contract, innocent misrepresentation, negligent misrepresentation, and declaratory relief. Defendants specified that they were not pursuing any ERISA claims, but were instead seeking relief under the Provider Agreements. In particular, according to defendants, under the Provider Agreements, plaintiff had an obligation to arrange for payment by the plans in accordance with the rate of payment set forth in the master payment schedules and the Provider Agreements required plaintiff to

---

[1] None of defendants actually signed the agreements. Instead, the agreements were signed by GAMBRO Healthcare, Inc. (which later became DVA Renal Healthcare, Inc.) and Physician's Dialysis of Michigan (which later became Physicians Dialysis Acquisitions, Inc.). Defendants are interrelated corporations and limited liability companies. The intricacies of the relationships between the companies are not relevant to this appeal. We simply note that all of defendants are covered by one of the Provider Agreements and that both Provider Agreements contain the same relevant language. Consequently, we will consider defendants collectively.

[2] The agreement refers to the NHLA, which stands for the National Health Lawyers Association. The NHLA combined with the American Academy of Healthcare Attorneys to form the AHLA.

contractually bind all current or future plans to the applicable rates in the Provider Agreements. Defendants claimed that plaintiff breached these obligations by processing the claims at a rate lower than required by the master schedule, incorrectly processing some claims as out-of-network claims subject to a lower rate of payment, and failing to contractually bind all current or future plans to the terms of the Provider Agreements. According to defendants' demand for arbitration, the dispute concerned the rate of payment, not whether the services were covered. Defendants sought damages of more than $6 million, a declaration of plaintiff's obligations under the Provider Agreements, and an order of specific performance requiring plaintiff to process or re-process past and future claims at the appropriate rate.

Plaintiff subsequently filed the instant lawsuit in the circuit court, alleging that defendants' claims were not arbitrable and that the arbitration initiated by defendants should be enjoined. The parties filed cross motions for summary disposition. The trial court concluded that, under the Provider Agreements, the parties had agreed to arbitrate the disputes at issue. Consequently, the trial court granted summary disposition to defendants under MCR 2.116(C)(7), denied plaintiff's motion for partial summary disposition, and ordered the parties to submit to arbitration. This appeal followed.

On appeal, plaintiff argues that the trial court erred by concluding that the parties' dispute was subject to arbitration, granting summary disposition to defendants, and denying plaintiff's motion for partial summary disposition. According to plaintiff, defendants' claims are ERISA claims or an attempt to create an alternate mechanism for enforcing ERISA claims, which should be brought against the plans, not plaintiff. Based on the premise that defendants' claims are covered by ERISA, plaintiff argues that defendants' claims are expressly exempted from arbitration by the Provider Agreements, and plaintiff contends that ERISA preempts defendants' state law claims, thereby precluding defendants from seeking relief from plaintiff through arbitration. Additionally, plaintiff argues that defendants' claims should not be submitted for arbitration because defendants failed to obtain an assignment of benefits and plaintiff is not the "payer" under the Provider Agreements. Lastly, plaintiff argues that defendants' non-contract claims for negligent and innocent misrepresentation are barred by the economic-loss doctrine.

We review de novo a trial court's decision on a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). "Under MCR 2.116(C)(7), summary disposition is appropriate if a claim is barred because of 'an agreement to arbitrate[.]' " *Altobelli v Hartmann*, 499 Mich 284, 295; 884 NW2d 537 (2016) (alteration in the *Altobelli*). "Whether a particular issue is subject to arbitration is also reviewed de novo, as is the interpretation of contractual language." *Id*. (citations omitted). ERISA preemption is also reviewed de novo. *American Council of Life Insurers v Ross*, 558 F3d 600, 603 (CA 6, 2009).

"The existence of an arbitration agreement and the enforceability of its terms are judicial questions for the court, not the arbitrators."[3] *Fromm v Meemic Ins Co*, 264 Mich App 302, 305;

---

[3] In the trial court, defendants asserted that, because the parties are incorporated in various states, the Provider Agreements affect interstate commerce, meaning that they are subject to the Federal Arbitration Act ("FAA"), 9 USC 1 *et seq.* On appeal, as a threshold matter, plaintiff argues that,

690 NW2d 528 (2004). See also MCL 691.1686(2). "Arbitration is a matter of contract." *Altobelli*, 499 Mich at 295 (quotation marks and citation omitted). "Accordingly, when interpreting an arbitration agreement, we apply the same legal principles that govern contract interpretation." *Id*. "The goal of contract interpretation is to read the document as a whole and apply the plain language used in order to honor the intent of the parties." *Greenville Lafayette, LLC v Elgin State Bank*, 296 Mich App 284, 291; 818 NW2d 460 (2012). "We must enforce the clear and unambiguous language of a contract as it is written." *Id*. "To ascertain the arbitrability of an issue, [a] court must consider whether there is an arbitration provision in the parties' contract, whether the disputed issue is arguably within the arbitration clause, and whether the dispute is expressly exempt from arbitration by the terms of the contract." *Fromm*, 264 Mich App at 305-306 (quotation marks and citation omitted; alteration in the original).

> In considering the scope of an arbitration agreement, we note that [a] party cannot be required to arbitrate an issue which [it] has not agreed to submit to arbitration. The general policy of this State is favorable to arbitration. The burden is on the party seeking to avoid the agreement, not the party seeking to enforce the agreement. In deciding the threshold question of whether a dispute is arbitrable, a reviewing court must avoid analyzing the substantive merits of the dispute. If the dispute is arbitrable, the merits of the dispute are for the arbitrator. [*Altobelli*, 499 Mich at 295-296 (quotation marks and citations omitted; alterations in *Altobelli*).]

In this case, the Provider Agreements contain the previously quoted arbitration provision in § 8.14 of the agreements. The provision provides that if a dispute "arising hereunder" cannot be resolved through informal discussions between the parties and "is one for which ERISA does not provide a dispute resolution procedure and remedy, or the dispute falls outside of ERISA, then the parties agree their sole recourse shall be to submit the matter to binding arbitration."

With regard to the dispute at issue, defendants alleged in their demand for arbitration that the Provider Agreements obligated plaintiff to arrange for the plans to pay defendants at a rate set forth in the master payment schedule, and defendants alleged that the Provider Agreements obligated plaintiff to contractually bind all current and future plans to the applicable rates in the

notwithstanding the general applicability of the FAA, Michigan law applies to the interpretation of the arbitration clause because the Provider Agreements contain a choice-of-law provision indicating that "[t]his Agreement shall be governed by and construed in accordance with the laws of the State of Michigan." We agree. The FAA recognizes that arbitration is a matter of contract. *Volt Info Sciences, Inc v Bd of Trustees of Leland Stanford Junior Univ*, 489 US 468, 478-479; 109 S Ct 1248; 103 L Ed 2d 488 (1989). Although the FAA prevents courts from construing an agreement to arbitrate "in a manner different from that in which it otherwise construes nonarbitration agreements under state law," *Perry v Thomas*, 482 US 483, 492 n 9; 107 S Ct 2520; 96 L Ed 2d 426 (1987), the FAA "allows parties to an arbitration contract considerable latitude to choose what law governs some or all of its provisions," *DIRECTV, Inc v Imburgia*, __ US __; 136 S Ct 463, 468; 193 L Ed 2d 365 (2015). Because the parties in this case have specified that their contract should be construed in accordance with the laws of Michigan, we will apply Michigan contract principles to determine whether they have agreed to arbitrate the disputes at issue. See *James v Global TelLink Corp*, 852 F3d 262, 265 (CA 3 2017).

Provider Agreements. Defendants further alleged that plaintiff breached these contractual obligations by failing to arrange for payments to be made at the correct rate of payment and by incorrectly processing submitted claims at a lower rate. Considering the plain language of the arbitration provision, a dispute over whether plaintiff breached its obligations regarding arranging for payment to be made according to the rate schedules in the Provider Agreements clearly arises under those agreements. Therefore, the dispute is "arguably within the arbitration clause" in the parties' contract. *Fromm*, 264 Mich App at 305-306.

"[W]hether the dispute is expressly exempt from arbitration by the terms of the contract," *id*. at 306, is a more difficult question. Under the terms of the arbitration provision, if the parties' dispute "involves a provision or circumstance covered by ERISA, the parties agree that the dispute resolution procedures and remedies available under ERISA will be their sole recourse." In other words, this provision expressly exempts disputes involving "a provision or circumstance covered by ERISA" from the otherwise applicable arbitration procedures. According to plaintiff, defendants' claims against plaintiff are covered—indeed they are preempted—by ERISA. Accordingly, we must analyze ERISA preemption as part of determining whether the claims involve a provision or circumstance covered by ERISA.

"Congress enacted ERISA to 'protect . . . the interests of participants in employee benefit plans and their beneficiaries' by setting out substantive regulatory requirements for employee benefit plans and to 'provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts.' " *Aetna Health Inc v Davila*, 542 US 200, 208; 124 S Ct 2488; 159 L Ed 2d 312 (2004), quoting 29 USC 1001(b) (alterations in *Aetna*). "The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans." *Id.* "To this end, ERISA includes expansive pre-emption provisions, see ERISA § 514, 29 USC § 1144, which are intended to ensure that employee benefit plan regulation would be exclusively a federal concern." *Id*. (quotation marks and citation omitted). Additionally, "ERISA's comprehensive legislative scheme includes an integrated system of procedures for enforcement" under § 502(a), 29 USC § 1132(a), which is "essential to accomplish Congress' purpose of creating a comprehensive statute for the regulation of employee benefit plans." *Id.* at 208 (citation and quotation marks omitted). Both § 514 and § 502(a) are relevant to determining whether defendants' claims against plaintiff are preempted, and thus covered, by ERISA.

Section 514 provides, in pertinent part, that "the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." Under this provision, "[i]f a state law "relate[s] to . . . employee benefit plan[s]," it is pre-empted by ERISA. *Pilot Life Ins Co v Dedeaux*, 481 US 41, 45; 107 S Ct 1549; 95 L Ed 2d 39 (1987) (alterations in original). "[A] state law relate[s] to a benefit plan in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Id*. at 47 (quotation marks and citation omitted; second alteration in original). "[E]ven general state contract and tort laws may also be preempted by ERISA." *Thurman v Pfizer, Inc*, 484 F3d 855, 861 (CA 6 2007). Section 514 is " 'clearly expansive,' " but "the term 'relate to' cannot be taken 'to extend to the furthest stretch of its indeterminacy,' or else 'for all practical purposes pre-emption would never run its course.' " *Egelhoff v Egelhoff ex rel Breiner*, 532 US 141, 146; 121 S Ct 1322; 149 L Ed 2d 264 (2001) (citations omitted). "[T]o determine whether a state law has the forbidden connection, we look both to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive,

as well as to the nature of the effect of the state law on ERISA plans." *Id*. at 147 (quotation marks and citation omitted).

In comparison, in relevant part, § 502(a) sets forth the integrated mechanisms for enforcement of ERISA, as follows:

A civil action may be brought—

(1) by a participant or beneficiary—

* * *

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]

The remedy available under ERISA is exclusive, and "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Davila*, 542 US at 209. The following test applies to determine whether a cause of action is within the scope of § 502(a)(1)(B):

[I]f an individual brings suit complaining of a denial of coverage for medical care, where the individual is entitled to such coverage only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan terms is violated, then the suit falls "within the scope of" ERISA § 502(a)(1)(B). In other words, if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B). [*Davila*, 542 US at 210 (citation omitted).]

This two-pronged test under *Davila* is conjunctive. *Gardner v Heartland Indus Partners, LP*, 715 F3d 609, 613 (CA 6 2013). Thus, defendants' claims are preempted by ERISA if (1) defendants could have brought their claims under § 502(a), *and* (2) no other legal duty, apart from ERISA, supports defendants' claims. See *Pascack Valley Hosp v Local 464A UFCW Welfare Reimbursement Plan*, 388 F3d 393, 400 (CA 3 2004).

In this case, defendants' claims are not within the scope of § 502. First, defendants could not have brought claims under § 502(a)(1)(B). Defendants are not participants or beneficiaries of the ERISA plans in question and there is no evidence that they have been assigned the right to bring the claims of plan participants or beneficiaries. As such, defendants do not have standing to pursue ERISA claims under § 502(a)(1)(B). Cf. *Pascack Valley Hosp*, 388 F3d at 400-402.

Second, even if defendants had standing to bring an ERISA claim, defendants' state law claims rest on a legal duty owed by plaintiff independent of ERISA. In particular, defendants have not alleged that plaintiff violated the terms of the ERISA plans, and they are not seeking coverage of a service for a patient under the plans. Instead, defendants allege that plaintiff

breached the terms of the Provider Agreement by failing to arrange for payment at the rate set forth in the Provider Agreements. Resolution of this dispute hinges on the interpretation of the Provider Agreements, not the ERISA plans. Further, the Provider Agreements are between defendants and plaintiff; and neither the plans nor the patients are parties to the Provider Agreements. In other words, defendants' state-law claims against plaintiff arise out of the Provider Agreements, which are separate from the plans. Cf. *id.* at 402-403.

Notably, in analogous cases involving provider agreements distinct from ERISA plans, courts have drawn a distinction between disputes dependent on a patient's right to coverage under an ERISA plan and disputes involving the rate of payment under a separate provider agreement to which the healthcare provider is a party. See *id.* at 402-403; *Blue Cross of California v Anesthesia Care Assoc Med Group, Inc*, 187 F3d 1045, 1051 (CA 9 1999). These cases recognize that, even if an ERISA plan might be consulted for some reason during the course of litigation, disputes involving the rate of payment under an agreement separate from the ERISA plan involve a duty independent of ERISA. See *Pascack Valley Hosp*, 388 F3d at 402-403; *Blue Cross of California*, 187 F3d at 1051-1052; *Marin Gen Hosp v Modesto & Empire Traction Co*, 581 F3d 941, 948 (CA 9 2009).[4] Likewise, in this case, defendants' claims do not involve a claim for coverage under the plans; rather, relying on the separate Provider Agreements, defendants have brought state-law claims premised on a duty independent of ERISA. This dispute over the rate of payment under the Provider Agreements, rather than the right to coverage in the first instance, is outside the scope of § 502(a)(1)(B). *Anesthesia Care*, 187 F3d at 1050-1051. As such, defendants' claims are not preempted by § 502(a)(1)(B). See *Davila*, 542 US at 210.

Defendants' claims also are not preempted by ERISA's express preemption provision in § 514(a). *Anesthesia Care*, 187 F3d at 1054. As discussed, neither the plans nor the plan participants are parties to the Provider Agreements; and, defendant is not seeking to enforce a right to coverage or benefits under ERISA. Instead, defendants' claims arise from a contract made between defendants as healthcare providers and plaintiff as a claim administrator. Cf. *id.*; *Penny*, 399 F3d at 700. Quite simply, defendants' state law claims implicate the Provider Agreements, and arbitration of these claims will not provide an alternative enforcement mechanism for securing ERISA benefits. See *Penny*, 399 F3d at 700; *Anesthesia Care*, 187 F3d at 1054. In these circumstances, defendants' state law claims do not "relate to" an ERISA-covered plan for purposes of § 514(a). *Anesthesia Care*, 187 F3d at 1054. Consequently, § 514 does not prevent arbitration of defendants' state law claims.

---

[4] In contrast to these decisions, plaintiff relies on *Cromwell v Equicor-Equitable HCA Corp*, 944 F2d 1272 (CA 6, 1991) and *Penny/Ohlmann/Nieman, Inc v Miami Valley Pension Corp*, 399 F3d 692 (CA 6, 2005). However, these cases are inapposite. *Cromwell* was decided before *Davila*, and it involved a situation in which ERISA-plan participants were denied coverage for services. *Cromwell*, 944 F2d at 1275-1277. In *Penny*, the contract at issue in the breach of contract claim was the ERISA plan. *Penny*, 399 F3d at 699. Unlike this case, both cases involved coverage disputes as opposed to disputes over the rate of payment under a separate agreement.

Having determined that defendants' claims do not fall within the scope of § 502 and that these state-law claims are not preempted by ERISA, it follows that the parties' dispute is not "covered" by ERISA within the meaning of § 8.14 of the Provider Agreements. Therefore, the terms of the contract do not expressly exempt this dispute from arbitration. Instead, under § 8.14 of the Provider Agreements, because the dispute "falls outside of ERISA," the trial court properly submitted the matter to binding arbitration in accordance with the parties' agreement. *Fromm*, 264 Mich App at 305-306.

Finally, we reject the remainder of plaintiff's arguments because they involve questions for the arbitrator, which we will not address when deciding the gateway arbitratibility question. For example, plaintiff claims that defendants cannot invoke the arbitration provision to assert a breach of the Provider Agreement without first obtaining assignments from the employee participants. However, procedural arbitration questions, such as whether there are any prerequisites to arbitration, are for the arbitrator to decide. *Bienenstock & Assoc, Inc v Lowry*, 314 Mich App 508, 516; 887 NW2d 237 (2016). Plaintiff also asserts that defendants' claims are without merit because, under the Provider Agreements, plaintiff is not a "payer" and plaintiff has no responsibility to pay defendants. This contract question goes directly to the underlying merits of the parties' dispute, meaning that this issue is for the arbitrator. See *Altobelli*, 499 Mich at 296. Likewise, issues regarding whether defendants can succeed on claims for misrepresentation, and whether the economic-loss doctrine bars such claims, involve the merits of the parties' dispute and these questions are properly decided by the arbitrator.[5] See *id.*

Accordingly, the trial court did not err by granting summary disposition to defendants, denying plaintiff's motion for partial summary disposition, and ordering the parties to submit to arbitration.

Affirmed. Having prevailed in full, defendants may tax costs pursuant to MCR 7.219.

/s/ Joel P. Hoekstra
/s/ Cynthia Diane Stephens
/s/ Douglas B. Shapiro

---

[5] On appeal, plaintiff also briefly asserts that claims for torts—such as negligent misrepresentation and innocent misrepresentation—cannot "arise" under the Provider Agreements. The arbitration provision applies to "any and all disputes arising hereunder." As alleged by defendants in their demand for arbitration, plaintiff made misrepresentations to defendants to the effect that plaintiff would honor the terms of the Provider Agreements. In these circumstances, the arbitration clause is sufficiently broad to encompass defendants' claims. Whether defendants can succeed on tort claims involving contractual obligations is a question for the arbitrator. See *Altobelli*, 499 Mich at 296.