FROMM v MEEMIC INSURANCE COMPANY

Docket No. 248879. Submitted September 15, 2004, at Detroit. Decided November 9, 2004, at 9:00 a.m. Leave to appeal sought.

Lisa Michelle Fromm, and her husband Edward Fromm, brought an action in the Oakland Circuit Court against MEEMIC Insurance Company, their automobile insurer, seeking the enforcement of a policy provision for arbitration with respect to their claim for uninsured motorist benefits for a miscarriage allegedly suffered by Lisa M. Fromm as a result of an automobile accident. The court, Fred M. Mester, J., granted summary disposition for the defendant, ruling that Lisa M. Fromm did not suffer a serious impairment of body function that affected her ability to lead a normal life so as to invoke coverage. The plaintiffs appealed.

The Court of Appeals *held*:

The issue in the case was not whether the parties contracted for insurance coverage, but whether Lisa Fromm's injuries rose to a level that warrants the payment of benefits. That is a question of contract interpretation that should be left to the arbitrator. A court is a gatekeeper to the arbitration process, leaving the actual resolution of particular disputes to the arbitrator. The only function of the court in this case is to determine whether arbitration applies, and not to further interpret the policy language. In that manner, bifurcation of the case is avoided, which bifurcation would defeat the efficiency of arbitration and undermine its value as an acceptable alternative to litigation. Were the court to determine the ultimate question, the arbitration clause in the policy would be a nullity.

Reversed.

MURPHY, P.J., dissenting, stated that the arbitration language contained in the uninsured motorist provisions of the insurance policy does not allow for arbitration of disagreements concerning insurance coverage unless otherwise agreed by express written consent of the parties. The majority's interpretation results in sending all likely issues of substance to arbitration on the demand of one party, despite the parties' agreement that only issues regarding the liability of the alleged tortfeasor and the amount of payment may be submitted for arbitration.

The dispute in this case concerns whether the plaintiffs are afforded coverage by the policy on the basis that Lisa Fromm suffered a serious impairment of body function. The record does not include an express agreement by the parties to having issues of coverage determined by arbitration. The trial court properly exercised its authority by addressing whether Lisa Fromm suffered a serious impairment of body function. Under the facts in this case, the question of coverage is not properly addressed in arbitration.

ARBITRATION — INSURANCE — COURT INTERPRETATION.

A court is a gatekeeper to the arbitration process, leaving the actual resolution of particular disputes to the arbitrator; the only function of a court from which a party to an insurance policy seeks an order compelling the arbitration of a dispute as provided in the policy is to determine whether arbitration applies, not to further interpret the policy language; deciding only whether arbitration applies avoids bifurcation of the case, which bifurcation would defeat the efficiency of arbitration and undermine its value as an acceptable alternative to litigation.

*F. Patrick Devine* for the plaintiffs.

*Galbraith & Booms* (by *Steven B. Galbraith* and *David L. Delie, Jr.*) for the defendant.

Before: MURPHY, P.J., and O'CONNELL and GAGE, JJ.

O'CONNELL, J. Plaintiffs appeal as of right the order granting defendant summary disposition under MCR 2.116(C)(10). This case arises from plaintiffs' claim for insurance benefits allegedly owed as a result of an automobile accident with an uninsured vehicle. Plaintiffs allege the accident caused Lisa Fromm to suffer a miscarriage. We reverse.

Plaintiffs' only claimed injury stemming from the November 2000 accident was the miscarriage. At the time of the accident, plaintiff was thirteen weeks pregnant. Before the accident, Lisa had not experienced any complications with the pregnancy, which was her

fourth. On the day following the accident, plaintiffs' doctor was able to find the fetus's heartbeat. Tragically, when Lisa returned to her doctor on December 19, 2000, the doctor was no longer able to detect a heartbeat. Plaintiffs report that they endured a physically and emotionally difficult miscarriage that required Lisa to be hospitalized for two days, during which she underwent a dilation and curettage procedure. Lisa became pregnant again in September 2001, but suffered a miscarriage approximately eight weeks into that pregnancy. Lisa became pregnant again in December 2001, and, as of her deposition in August 2002, she had not experienced any complications with that pregnancy.

Plaintiffs notified defendant of the accident and asserted that Lisa had suffered a compensable injury under the uninsured motorist provisions of the insurance policy. Plaintiffs sought arbitration under their insurance policy with defendant. After defendant failed to name an arbitrator, plaintiffs filed their complaint asserting that defendant was in breach of the policy and seeking an order to enforce arbitration. Defendant responded, in part, that Lisa's injuries were insufficient to invoke coverage because Lisa had not sustained a serious impairment of an important body function. The trial court agreed, finding that there was no evidence that Lisa's miscarriage affected her ability to lead a normal life. Plaintiffs now appeal the court's grant of summary disposition in favor of defendant.

Plaintiffs first argue that the impairment suffered by Lisa is compensable under the terms of the policy. We do not reach this issue because our interpretation of the policy and our application of precedent lead us to conclude that an arbitrator must determine whether Lisa has suffered a compensable injury. We review de

novo a trial court's decision to grant summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999).

The insurance policy states that defendant will pay damages for bodily injury that is sustained by the insured person and "results in death, serious impairment of body function or permanent serious disfigurement." "Serious impairment of body function" is defined in the policy as "an objectively manifested injury to an important body function which substantially affects an insured person's general ability to lead a normal life." The policy does not mention the terms "covers" or "coverage" in conjunction with the injury standard. Nevertheless, defendant argues that whether Lisa's injury rises to the level of a serious impairment is an issue of coverage under the uninsured motorist provision. It argues that the policy excludes from arbitration matters involving the policy's coverage. The policy states: "Unless otherwise agreed by express written consent of both parties, disagreements concerning insurance coverage, insurance afforded by the coverage, whether or not a motor vehicle is an uninsured motor vehicle or the timeliness of a Demand for Arbitration, are not subject to arbitration . . . ."

The existence of an arbitration agreement and the enforceability of its terms are judicial questions for the court, not the arbitrators. *Huntington Woods v Ajax Paving Industries, Inc (After Remand)*, 196 Mich App 71, 74; 492 NW2d 463 (1992). "The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties." *McIntosh v Groomes*, 227 Mich 215, 218; 198 NW 954 (1924). "To ascertain the arbitrability of an issue, [a] court must consider whether there is an arbitration provision in the parties' contract, whether the disputed issue is arguably within the arbitration

clause, and whether the dispute is expressly exempt from arbitration by the terms of the contract." *Huntington Woods, supra* at 74-75. The court should resolve all conflicts in favor of arbitration. *Id.* at 75. However, a court should not interpret a contract's language beyond determining whether arbitration applies and should not allow the parties to divide their disputes between the court and an arbitrator. *Brucker v McKinlay Transport, Inc,* 454 Mich 8, 15, 17-18; 557 NW2d 536 (1997). Dispute bifurcation defeats the efficiency of arbitration and considerably undermines its value as an acceptable alternative to litigation.[1] Moreover, contract provisions that assign new roles to courts and arbitrators impermissibly usurp the authority of the court rules and the arbitration statutes. For example, we will not enforce a provision that gives courts the authority to determine the legal effect of a contract but requires the arbitration of damages and other factual issues. *Id.* When faced with a potentially improper contract provision, however, we always attempt to interpret the provision in a way that renders it legally acceptable and enforceable according to the presumed intent of the parties. *Cruz v State Farm Mut Automobile Ins Co,* 466 Mich 588, 599; 648 NW2d 591 (2002).

---

[1] The dissent's reasoning amounts to an approval of a bifurcated process to resolve the extent of the injury suffered by plaintiff. In this case of a material fact issue regarding serious impairment of a body function, the dissent's process would require a jury trial in the state court and then a referral to arbitration to resolve the balance of the issues. While that process is feasible, it is definitely a bifurcation of judicial responsibilities between courts and the arbitrator and, in essence, renders the entire process duplicative. While defendant insurance company is free to select the process used to resolve the conflict, it should not be allowed to bifurcate the process to the extent that it drives up the cost of litigation, wastes judicial resources, and renders arbitration a backstop for failed litigation. Litigants must be required to select only one dispute resolution process. What parties may not do is reach private agreements to arbitrate that dictate a role for public institutions. *Brucker, supra* at 17.

Given the vagueness of the term "coverage," defendant insurance company argues that the extent of Lisa's injury determines whether the injury is "covered." Therefore, according to defendant's interpretation of the contract, a court should decide whether the injury rises to the level of a serious impairment as a matter of "coverage." However, such an interpretation would render the arbitration provision a nullity because all disputes involving the payment of benefits could foreseeably fall within the ambit of "coverage." One can easily envision the insurance company arguing that the policy does not "cover" a particular medical procedure, a certain type of suffering, or a particular injury, whether a miscarriage, whiplash, or a broken ankle. These are traditionally aspects of damages and contract interpretation left to an arbitrator, and we are not persuaded that the parties intended the term "coverage" to encompass so much. This interpretation has the additional disadvantage of allowing the parties an avenue to get their more technical legal arguments before the court rather than requiring them to submit the entire dispute to arbitration. The insurance company used this avenue when it submitted the interpretation of "serious impairment" to the court rather than the arbitrator. However, it also left open the possibility that it could return to arbitration to determine damages if the court found a serious impairment. We eschew any interpretation that permits the division of a dispute.

Another viable interpretation is that the term "coverage" means the formation and existence of the contract and its various aspects, such as policy life, limits, and riders. Under this interpretation, whether the policy affords "coverage" to an individual strictly depends on the policy's language and would not require detailed articulation and resolution of issues underlying the instant dispute. Furthermore, a court's determina-

tion of the existence of "coverage" in the narrow sense simply reinforces the court's role as gatekeeper to the arbitration process and leaves the actual resolution of particular disputes with the arbitrator—just as the parties intended. This interpretation leaves the arbitration provision intact and avoids the improper bifurcation of judicial responsibilities between courts and arbitrators.[2] Therefore, we adopt this interpretation of the term "coverage" as it pertains to this policy.

In this case, the issue is not whether the parties contracted for insurance coverage, but whether Lisa's injuries rise to a level that warrants the payment of benefits. This is a matter of contract interpretation, so we leave it to the arbitrator. *Brucker, supra.*

Reversed and remanded for an order sending the parties to arbitration. We do not retain jurisdiction.

Gage, J., concurred.

Murphy, P.J. (*dissenting*). I respectfully dissent. The arbitration language contained within the uninsured motorist provisions of the insurance policy does not allow for arbitration of the issue regarding whether Lisa Fromm suffered a serious impairment of body function by way of miscarriage because there was no express written consent to arbitrate matters of coverage. The issue whether Fromm suffered a serious impairment of body function clearly concerns a question whether plaintiffs are afforded coverage under the policy and is not related to matters regarding the liability or negligence of the alleged tortfeasor or the

---

[2] If we did not read the policy's "coverage" language narrowly, the policy would presumably allow the insurance company to determine all issues of liability in court, and then, if found liable, turn its back to the jury and head for arbitration to determine damages. This interpretation would violate the rule against dividing contract disputes between forums.

amount of any insurance payment, both of which matters are not presently at issue. I would find that the trial court properly exercised its subject-matter jurisdiction over the case by rejecting plaintiffs' arbitration claims and substantively reviewing defendant's counterclaim seeking a declaratory judgment on the issue of serious impairment.

The insurance policy, in regards to arbitration and uninsured motorist coverage, provides, in pertinent part:

> If we do not agree with the insured person(s): that they are legally entitled to recover damages from the owner or operator of an uninsured motor vehicle; or as to the amount of the payment; either they or we must demand, in writing, that the issues, excluding matters of coverage, be determined by arbitration. . . . Unless otherwise agreed by express written consent of both parties, disagreements concerning insurance coverage, insurance afforded by the coverage, whether or not a motor vehicle is an uninsured motor vehicle or the timeliness of a Demand for Arbitration, are not subject to arbitration and suit must be filed within two years from the date of the accident. [Alteration in format; emphasis deleted.]

Plaintiffs requested arbitration of their claims following the accident, but according to plaintiffs, defendant failed to name an arbitrator. Plaintiffs filed a complaint asserting that defendant was in breach of contract for failing to cooperate with arbitration and sought an order to enforce arbitration. Defendant filed a counterclaim for declaratory relief, alleging that Lisa Fromm did not suffer bodily injury that resulted in death, serious impairment of body function, or permanent serious disfigurement as required to give rise to an obligation by defendant to provide uninsured motorist coverage under the terms of the insurance policy. The trial court granted summary disposition in favor of

defendant, ruling that Lisa Fromm did not suffer a serious impairment of a body function because there was no evidence that the miscarriage affected her general ability to lead a normal life. The trial court denied plaintiffs' motion for summary disposition and did not directly address the arbitration argument. Plaintiffs' motion for reconsideration under MCR 2.119(F) was denied.

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Koenig v South Haven,* 460 Mich 667, 674; 597 NW2d 99 (1999). The proper interpretation of a contract, including an insurance contract or policy, is a question of law that this Court reviews de novo. *Wilkie v Auto-Owners Ins Co,* 469 Mich 41, 47; 664 NW2d 776 (2003). This Court reviews a trial court's decision to grant or deny a motion for reconsideration for an abuse of discretion. *Churchman v Rickerson,* 240 Mich App 223, 233; 611 NW2d 333 (2000).

MCR 2.116(C)(7) tests, in part, whether claims are barred due to an agreement to arbitrate. The contents of the complaint are accepted as true unless contradicted by documentation submitted by the moving party. *Pusakulich v Ironwood,* 247 Mich App 80, 82; 635 NW2d 323 (2001). In analyzing a motion for summary disposition pursuant to MCR 2.116(C)(7), the trial court must consider all affidavits, depositions, admissions, or other documentary evidence if submitted or filed by the parties. *Id.;* MCR 2.116(G)(5). When material facts are not disputed, the issue becomes whether the defendant is entitled to judgment as a matter of law. *Gilliam v Hi-Temp Products, Inc,* 260 Mich App 98, 108-109; 677 NW2d 856 (2003).[1]

---

[1] With regard to a motion for rehearing or reconsideration, MCR 2.119(F)(3) provides the following guidelines:

The principles of construction that govern contracts in general are also applicable to insurance policies. *Farm Bureau Mut Ins Co of Michigan v Nikkel*, 460 Mich 558, 566; 596 NW2d 915 (1999). "The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties." *McIntosh v Groomes*, 227 Mich 215, 218; 198 NW 954 (1924). "Where no ambiguity exists, this Court enforces the contract as written." *Nikkel, supra* at 566, citing *Morley v Automobile Club of Michigan*, 458 Mich 459, 465; 581 NW2d 237 (1998). An insurance contract is deemed ambiguous when its provisions are capable of interpretations that conflict. *Nikkel, supra* at 566. An insurer may define or limit the scope of coverage under a policy as long as the policy language fairly leads to only one interpretation and is not in contravention of public policy. *Id.* at 568.

The existence of an arbitration agreement and the enforceability of its terms are judicial questions for the court, not the arbitrators. *Huntington Woods v Ajax Paving Industries, Inc (After Remand)*, 196 Mich App 71, 74; 492 NW2d 463 (1992). Arbitration is a matter of contract, and a valid agreement must exist before a party is required to submit to arbitration. *Arrow Overall Supply Co v Peloquin Enterprises*, 414 Mich 95, 98; 323 NW2d 1 (1982); *Amtower v William C Roney & Co (On Remand)*, 232 Mich App 226, 234; 590 NW2d 580 (1998). "To ascertain the arbitrability of an issue, the court must consider whether there is an arbitration provision in the parties' contract, whether the disputed

---

Generally, and without restricting the discretion of the court, a motion for rehearing or reconsideration which merely presents the same issues ruled on by the court, either expressly or by reasonable implication, will not be granted. The moving party must demonstrate a palpable error by which the court and the parties have been misled and show that a different disposition of the motion must result from correction of the error.

issue is arguably within the arbitration clause, and whether the dispute is expressly exempt from arbitration by the terms of the contract." *Huntington Woods, supra* at 74-75 (citation omitted).

The majority, relying on the case of *Brucker v McKinlay Transport, Inc,* 454 Mich 8; 557 NW2d 536 (1997), writes that "a court should not interpret a contract's language beyond determining whether arbitration applies and should not allow the parties to divide their disputes between the court and an arbitrator." *Ante* at 306. The majority further declares, "[d]ispute bifurcation defeats the efficiency of arbitration and considerably undermines its value as an acceptable alternative to litigation." *Ante* at 306.

In *Brucker,* the defendant, McKinlay, bought several trucking companies owned by U.S. Truck Company, Inc., and the stock purchase agreement evidencing the sale contained a provision under which disputes by the buyer regarding any accounting matters shall be submitted to arbitration. The agreement also provided that any questions of contract interpretation shall be determined by the circuit court. A dispute arose and McKinlay exercised its right to arbitration. After years of disagreements and a court battle over issues concerning waiver of arbitration and the naming of an appropriate arbitrator, BDO Seidman undertook the arbitration. Early in the arbitration proceedings, a stipulated order adopting rules of arbitration was entered. The rules included a provision allowing the arbitrator to submit any issues of contract interpretation with respect to the purchase agreement and accounting matters to the circuit court. Of course, issues of contract construction arose, with BDO Seidman presenting two alternative conclusions in part of its arbitration ruling dependent on the circuit court's interpretation of the underlying

contract, and the circuit court rendered a ruling interpreting the contract and subsequently entered judgment. *Brucker, supra* at 9-14.

The Michigan Supreme Court first noted that the Court of Appeals had held sua sponte that the arbitration agreement constituted statutory arbitration under MCL 600.5001 *et seq.,* and that the arbitration agreement was invalid because it called for questions of contract interpretation to be decided by the circuit court, which was in violation of the limited role a court could have in regard to arbitration under statutory arbitration and the accompanying court rule, MCR 3.602. *Brucker, supra* at 14-15. Our Supreme Court further noted that the Court of Appeals had concluded that only the arbitrator could interpret the contract and that this Court then vacated the circuit court's judgment, setting aside entirely the arbitration and its result. *Id.* at 15-16. Finally, the Supreme Court referenced Judge O'CONNELL's dissenting opinion and his argument that he would simply strike the offending clauses, leaving a wholly valid and enforceable arbitration agreement. *Id.* at 16-17.

Our Supreme Court agreed with this Court to the extent that the statute and the court rule do "not allow the parties to use the courts as a resource that will issue advisory opinions to guide the arbitrator through the more difficult portions of the task." *Id.* at 17-18. Thus, the arbitration provision in the purchase agreement and the stipulated rules of arbitration were invalid in regard to those portions calling on circuit court intervention. The Court, however, agreeing with Judge O'CONNELL, stated, "it would be unnecessary and improvident to reject entirely the arbitration agreement in this case." *Id.* at 18. The Supreme Court concluded:

Our ruling today concerns an arbitration agreement executed in 1982, and implemented by rules of arbitration that were adopted by stipulation and executed without protest by the parties and the circuit court. From these events, we can discern neither prejudice to any party nor significant harm to the integrity of the court system. Accordingly, our analysis of the arbitration issue raised sua sponte by the Court of Appeals is prospective, and does not affect the stipulated manner of arbitration adopted by the parties in this case. [*Id.* at 18-19.]

I find it important to reflect on footnote 9 of the *Brucker* opinion, in which the Court stated that, before a complaint is filed, the parties in a civil dispute can agree that part of the dispute will be resolved by arbitration. *Id.* at 18 n 9. The Court then stated that the remaining portion of the dispute can be resolved by a court if there exists a claim on which relief can be granted. The Court, after first quoting MCL 600.5025, which provides that "circuit courts have jurisdiction to enforce the agreement and to render judgment on an award thereunder," concluded that "[t]he problem in this instance is that the parties produced a sales agreement and arbitration rules that called on the circuit court to take a role unrelated to any properly pending litigation[.]" *Brucker, supra* at 18 n 9.

Footnote 9 of *Brucker*, in my opinion, indicates that, as a general proposition, parties may contract to have some controversies or issues dealt with through arbitration while also agreeing to have other distinct controversies or issues that may arise between those same parties dealt with by a court of law. This interpretation of the footnote is consistent with MCL 600.5001(2), which provides:

A provision in a written contract to settle by arbitration under this chapter, a controversy thereafter arising between the parties to the contract, with relation thereto,

and in which it is agreed that a judgment of any circuit court may be rendered upon the award made pursuant to such agreement, shall be valid, enforceable and irrevocable save upon such grounds as exist at law or in equity for the rescission or revocation of any contract. Such an agreement shall stand as a submission to arbitration of any controversy arising under said contract *not expressly exempt from arbitration by the terms of the contract.* Any arbitration had in pursuance of such agreement shall proceed and the award reached thereby shall be enforced under this chapter. [Emphasis added.][2]

The problem that arose in *Brucker,* as I view the case, was that accounting disputes were clearly subject to arbitration, yet, *within the determination of the accounting dispute by the arbitrator,* the court was asked to step in and play a role as a contract interpreter, and any court ruling regarding contract interpretation would bind the arbitrator within the context of the arbitrator's ruling on the accounting dispute. This bifurcation was not permissible as the parties could not use the court as a resource "to guide the arbitrator through the more difficult portions of the task." *Brucker, supra* at 18. The circuit court's sole role in *Brucker* was to interpret the contract within the arbitration proceedings, with the remaining accounting matters being addressed by the arbitrator but within the confines of the court's contract construction, and the court's role was thus unrelated to any "properly pending litigation" that could have been heard in the circuit court. *Id.* at 18 n 9. Although the parties ostensibly gave the court authority to interpret the contract for purposes of the accounting dispute subject to arbitration, there was no independent action on the accounting dispute being litigated in the circuit court,

---

[2] As in *Brucker,* the arbitration language at issue here falls under the statutory arbitration provisions of MCL 600.5001 et seq.

nor could such an action be litigated in court because of the contract's language requiring arbitration. *Brucker* does not require us to reverse the trial court's decision regarding arbitration in the case before us.

Here, on the demand of one party, a dispute concerning whether the insured was legally entitled to recover damages from the owner or operator of the uninsured motor vehicle (liability or negligence of the alleged tortfeasor), or a dispute about the amount of payment, shall be resolved by arbitration. The insurance policy does not call on the circuit court to play a role in the arbitrator's decision-making process regarding these potential issues. Plaintiffs indeed made a general arbitration demand. Yet there is no apparent dispute regarding the liability of the alleged tortfeasor,[3] nor is there a current dispute concerning the *amount* of payment or damages.

Rather, the dispute is whether plaintiffs are even afforded coverage by the policy, and more specifically, whether Lisa Fromm suffered a serious impairment of body function. There are no uninsured motorist benefits afforded under the policy unless the accident resulted in death, serious impairment of body function, or permanent serious disfigurement. Issues pertaining to matters of coverage, insurance afforded by the coverage, or disagreements concerning coverage are not subject to arbitration, under the clear and unambiguous wording of the policy, unless there is express written consent by the parties. The record does not reveal a writing reflecting that the parties expressly consented to having issues of coverage determined by arbitration. There was properly pending litigation in the trial court with respect to the issue whether coverage was afforded

---

[3] Plaintiffs' vehicle was struck from behind by the uninsured vehicle while they waited at a red light.

under the policy, considering defendant's counterclaim seeking a declaratory judgment that Lisa Fromm did not suffer a serious impairment of body function, thereby precluding plaintiffs from receiving any benefits under the policy. This is undoubtedly an issue relating to "coverage." Moreover, the trial court's resolution of the issue could not be affected by any role played by an arbitrator.

I respectfully disagree with the majority's conclusion that the term "coverage" as used in the policy is vague and requires narrow interpretation; it requires proper interpretation. "Coverage" is defined as "protection against a risk or risks specified in an insurance policy." *Random House Webster's College Dictionary* (2001). The insurance policy does not protect against the risk of an injury that does not rise to the level of serious impairment of body function. Whether Lisa Fromm suffered a serious impairment of body function involves the question whether she is afforded "protection against a risk . . . specified in an insurance policy." The majority's "narrow" interpretation of the term "coverage" as meaning "the formation and existence of the contract and its various aspects, such as policy life, limits, and riders[,]" *ante* at 307, is inconsistent with the use of the term "coverage" in the arbitration provision and would effectively have us render as nugatory or meaningless the language discussing written consent, coverage afforded under the policy, and arbitration. The majority is rewriting the parties' contract, and its interpretation is more than "narrow," it is inaccurate and inconsistent with the policy.[4] Essentially,

---

[4] The majority notes that, if the policy is not interpreted as done so in its opinion, defendant could have coverage issues determined in court and then have issues concerning the amount of payment or damages resolved in arbitration; the majority would find such an interpretation to violate the rule against dividing contract disputes between forums. Ante

the majority's interpretation results in sending all likely issues of substance to arbitration on the demand of one party despite the parties' agreement that only issues regarding the liability of the alleged tortfeasor and the amount of payment may be arbitrated on demand of one party. The issue of serious impairment of body function, which is the only substantive issue in dispute here with any other possible substantive disputes being purely speculative, relates to the issue of coverage and whether plaintiffs are entitled to receive any benefits, not to an issue regarding the *amount* of payment.

I find of assistance this Court's decision in *Linebaugh v Farm Bureau Mut Ins Co,* 224 Mich App 494; 569 NW2d 648 (1997). In *Linebaugh,* the plaintiff brought an action against his automobile insurer, the defendant, seeking to compel the insurer to have the plaintiff's claim for underinsured motorist benefits arbitrated after the plaintiff had previously settled with the insurer of the underinsured motorist despite the objection of the plaintiff's insurer. The defendant's insurance policy contained an exclusion providing that underinsured motorist coverage did not apply to any claims settled without the defendant insurer's consent. The insurance policy "allowed either the insurer or the insured to invoke binding arbitration where they disagreed whether the insured was 'legally entitled to recover damages from the owner or driver of an [under-insured] motor vehicle' or did 'not agree as to the

---

at 306 n 1. While a court could conceivably determine that there is coverage afforded by the policy and then allow the parties to resolve any further dispute about the amount of payment in arbitration, the principles in *Brucker* would not be offended because the arbitrator would have the full and sole authority to determine the amount of payment without the trial court playing any role in the matter.

amount of damages.' " *Id.* at 496 (alteration in original). The *Linebaugh* panel stated:

> As explained in *Port Huron Area School Dist v Port Huron Ed Ass'n,* 426 Mich 143, 150-151; 393 NW2d 811 (1986), the scope of an arbitrator's remedial authority is limited to the contractual agreement of the parties. *Parties may agree to arbitrate disputes covering a broad range of issues or they may agree to arbitrate only one or a handful of narrow issues.* [*Linebaugh, supra* at 499-500 (emphasis added).]

This Court, reviewing the arbitration clause and the policy exclusion language that was at issue, stated:

> The present case involves a . . . narrow arbitration provision. Pursuant to this provision, the only issues that the parties agreed to arbitrate are the issues of the legal liability of the alleged tortfeasor and the extent of the insured's damages. Neither of these matters is presented in the present appeal. Rather, we are asked simply to determine whether an exclusion applies, which is to say, we must determine whether coverage exists and only then, if at all, will the parties reach the questions of liability and damages. Had the arbitration provision in issue been of the broad variety, providing that disputes pertaining to coverage "under this part" or the like were arbitrable, the question whether an exclusion applies would properly be one for arbitration. However, given that the question presented does not concern a matter that the parties have agreed to arbitrate, this Court properly addresses it. [*Id.* at 502-503.]

Likewise, the only issues subject to arbitration here, considering that there was no express written consent to arbitrate matters of coverage, concern the legal liability of the alleged tortfeasor and the amount of the insurance payment, and these issues were not and are not presented. Rather, the issue in dispute pertains to coverage, i.e., whether Lisa Fromm suffered a serious impairment of body function so as to be entitled to

benefits under the policy. This is similar to the situation in *Linebaugh* and its review of whether an exclusion to the policy applied, which issue would have been subject to arbitration had the arbitration provision applied to disputes regarding coverage. The *Linebaugh* panel was not concerned with the possibility that had it found that the policy exclusion did not apply, questions of tortfeasor liability and the extent of damages could be heard and resolved in arbitration despite a court resolving the issue concerning the policy exclusion. Under the majority's analysis here, the *Linebaugh* panel should have deferred and sent the matter of the exclusion, or policy coverage, to arbitration for resolution.

I conclude that the trial court properly exercised its authority by addressing, in the context of summary disposition, whether Lisa Fromm suffered a serious impairment of body function. The court properly rejected plaintiffs' attempt to have the issue addressed in arbitration. I would uphold the trial court's ruling concerning arbitration and then substantively address the ruling regarding miscarriage and serious impairment of body function.

I respectfully dissent.