*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JOHN L. ROSEMAN,

Plaintiff-Appellant,

v

GWEN WEIGER, KELLER WILLIAMS, doing business as KELLER WILLIAMS REALTY, INC., CURTIS-BOTSFORD REAL ESTATE, LLC, KELLER WILLIAMS REALTY WEST BLOOMFIELD MARKET CENTER, PATRICIA A. ADAMS, and PATRICK BURGESS,

Defendants-Appellees.

UNPUBLISHED
June 27, 2019

No. 344677
Oakland Circuit Court
LC No. 2018-164581-CH

Before: CAMERON, P.J., and MARKEY and BORRELLO, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's orders granting defendants' motion to set aside a default against Keller Williams, doing business as Keller Williams Realty, Inc. (collectively, Keller Williams), and granting defendants' motion for summary disposition under MCR 2.116(C)(7). For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

This case arises out of plaintiff's purchase of a personal residence from defendants Patricia Adams and her husband, Patrick Burgess (sellers) in 2016. Sellers had completed a Seller's Disclosure Statement (SDS) on August 8, 2015, which they had updated on December 30, 2015. Pertinent to the issues here, the SDS indicated that the house had a geothermal heating system that was in working order. Further, the SDS indicated that there were features of the property deemed in common with the adjoining landowners, including roads, whose use or responsibility for maintenance may have an effect on the property. In regards to this disclosure, the SDS referred to an attached property maintenance agreement, which indicated that ingress and egress to the property was by means of a private easement road. The property maintenance

-1-

agreement further stated that the owner of the property, along with owners of other parcels serviced by the private road, was responsible for paying maintenance costs for the private road. This property maintenance agreement had also been recorded with the Oakland County Register of Deeds.

In May 2016, plaintiff and sellers executed a purchase agreement for the sale of the subject property. Defendant Gwen Weiger, an independent agent with Keller Williams Realty West Bloomfield Market Center, represented sellers in the transaction. The record reflects that Keller Williams Realty West Bloomfield Market Center was independently owned and operated by Curtis-Botsford Real Estate, LLC, and that Keller Williams was a franchiser that licensed the rights to use its trademarks and logos. Pertinent to this appeal, the purchase agreement contained an "as-is-condition" clause, providing:

> **AS IS CONDITION**: Purchaser acknowledges that Seller has provided Purchaser a required Seller's Disclosure Statement. Purchaser has been afforded an independent inspection of the property and the Purchaser affirms that Purchaser has examined the above described property and is satisfied with the physical condition of the structure thereon and purchases said property in an "AS IS CONDITION," subject only to the rights of a property inspection. It is further agreed that Keller Williams Realty and its agents have made no representations or warranties of any kind nor assume any responsibility for representations made by Seller or any cooperating broker pertaining to the condition of the property. It is further understood that no promises have been made other than those that are in writing and signed by all parties involved (NO VERBAL AGREEMENTS WILL BE BINDING).

The purchase agreement also contained a release, providing:
> **RELEASE**: Purchaser recognizes that Seller has provided Purchaser a required Seller's Disclosure Statement. Purchaser has been afforded the right to independent inspections of the property and Purchaser affirms that property is being purchased "AS IS" and hereby knowingly waives, releases and relinquishes any and all claims or causes of action against Keller Williams, its officers, directors, employees and independent sales associates. Purchaser and Seller recognize and agree that brokers and sales associates involved in this transaction are not parties to this Agreement. Broker and sales associates specifically disclaim any responsibility for the condition of the property or for the performance of the Agreement by the parties. Keller Williams assumes no liability for performance of any inspection or statements on Seller's disclosure form.

Plaintiff, in addition to signing the purchase agreement, specifically initialed both the release and "as is" clauses. The purchase agreement also contained the following arbitration clause:
> **ARBITRATION**:
>
> A. Any claim of Seller or Buyer arising out of this agreement relating to the disposition of the earnest money deposit or the physical condition of the property covered by this agreement shall be arbitrated in accordance with the rules, then in

effect, adopted by the American Arbitration Association. This is a voluntary agreement between the Buyer and Seller and the failure to agree to arbitrate does not affect the validity of this agreement. This agreement is made subject to and incorporates the provisions of Michigan law governing arbitration. This provision shall survive closing.

This arbitration clause was expressly made part of the purchase agreement by checking the box indicating its inclusion rather than the alternate paragraph that stated, "The parties do not wish to agree to arbitrate future disputes."

In December 2016, several months after the closing, the geothermal furnace allegedly failed. Plaintiff maintained that he was informed that it was necessary to replace the unit.

On March 23, 2018, plaintiff initiated the instant action by filing a complaint naming Weiger, Keller Williams, Curtis-Botsford Real Estate, LLC, and Keller Williams Realty West Bloomfield Market Center as defendants. In this complaint, plaintiff alleged that defendants had violated MCL 560.261 by failing to represent in the purchase agreement that the subject property was located on a private road. Plaintiff sought to void the purchase agreement on this basis and requested damages equal to the purchase price, the mortgage payments he had made on the home, and the cost of repairing the private road.

On April 11, 2018, before defendants filed an answer, plaintiff filed a first amended complaint adding claims against sellers and several new claims against the realty companies and agent. The amended complaint alleged that before execution of the purchase agreement, defendants knowingly made representations attesting to the proper working condition of the property's geothermal heating system, even though defendants knew that these representations were false and that the furnace was broken or "showed signs of potential breakdown." The amended complaint further alleged that defendants failed to represent in the purchase agreement that the property was located on a private road. Plaintiff also alleged in the amended complaint that sellers omitted facts regarding ownership of the private road and its condition. Plaintiff alleged a violation of § 5 of the Seller Disclosure Act, MCL 565.951 *et seq*., fraudulent misrepresentation, silent fraud, negligent misrepresentation, negligent infliction of mental and emotional distress, unjust enrichment, and a violation of § 261 of the Land Division Act, MCL 560.101 *et seq*. He sought $5,000,000 in damages; to void the property sale; a refund of all mortgage and other payments made with respect to the transaction; and an award of "statutory, punitive, treble, economic, and non-economic damages in order to penalize Defendants."

On May 2, 2018, in lieu of filing an answer, defendants moved for summary disposition pursuant to MCR 2.116(C)(7), (8), and (10). As pertinent to the issues now on appeal, defendants argued that plaintiff's claims against the realty companies and real estate agent were barred by the release contained in the purchase agreement and that any claims against sellers regarding the geothermal heating system or private road were subject to arbitration pursuant to the agreement's arbitration clause. Plaintiff opposed defendants' motion for summary disposition, apparently arguing that his complaint was not subject to the release or arbitration clauses contained in the purchase agreement because the agreement was invalid, unenforceable, or void as it was founded on defendants' fraudulent misrepresentations and omissions regarding the nature of the private road and the condition of the heating system.

The trial court granted defendants' motion for summary disposition under MCR 2.116(C)(7), concluding that the claims against the realty companies and Weiger were barred by the valid release contained in the purchase agreement and that the claims against sellers were required to be resolved in arbitration because they fell within the scope of the arbitration clause in the purchase agreement. This appeal ensued.

## II. ORDER SETTING ASIDE DEFAULT

As an initial matter, plaintiff raises several arguments that essentially constitute a challenge to the propriety of the trial court's decision to set aside a default that had been entered against Keller Williams.

The trial court entered a default against Keller Williams on June 6, 2018. The following day, defendants moved to set aside the default on the ground that it was entered erroneously and was a clerical error. Defendants noted that all defendants, including Keller Williams, had jointly moved for summary disposition within 21 days of plaintiff's filing of his first amended complaint and that they therefore had timely responded to and defended against plaintiff's first amended complaint pursuant to the Michigan Court Rules. Following a hearing on the record at which plaintiff was present, the trial court granted the motion and set aside the default on the basis of defendants' timely filing of their motion for summary disposition.

This Court's review of a trial court's decision on a motion to set aside a default is for an abuse of discretion. *Huntington Nat'l Bank v Ristich*, 292 Mich App 376, 383; 808 NW2d 511 (2011). "A trial court abuses its discretion when it reaches a decision that falls outside the range of principled outcomes." *Id*. Issues of law, such as the interpretation and application of court rules, are reviewed de novo. *Id*.

Pursuant to MCR 2.603(A)(1), a default must be entered against a party if it is established that "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by [the Michigan Court Rules]." However, under MCR 2.603(D)(3), "the court may set aside a default and a default judgment in accordance with MCR 2.612." MCR 2.612(A)(1) in turn provides that "[c]lerical mistakes in judgments, orders, or other parts of the record and errors arising from oversight or omission may be corrected by the court at any time on its own initiative or on motion of a party and after notice, if the court orders it." Further, under MCR 2.612(C)(1)(a), "the court may relieve a party . . . from a final judgment, order, or proceeding" on the grounds of mistake or inadvertence.

In this case, although defendants never filed an answer, they moved for summary disposition on all of plaintiff's claims after plaintiff filed his amended complaint. It is a fundamental concept of civil procedure that a party may permissibly move for summary disposition under MCR 2.116 before filing an answer in response to a complaint. See MCR 2.116(D)(1) and (2) (discussing motions filed under MCR 2.116 prior to the party's first responsive pleading and when certain grounds for summary disposition must be raised); MCR 2.108(A)(1) ("A defendant must serve and file an answer *or take other action permitted by law or these rules* within 21 days after being served with the summons and a copy of the complaint in Michigan . . .") (emphasis added); MCR 2.108(C)(1) (discussing the effect on timing requirements for filing a responsive pleading if "a motion under MCR 2.116 made before filing a

responsive pleading is denied"); *Huntington Nat'l Bank*, 292 Mich App at 387 (recognizing that certain actions "alter[]the time for filing an answer, such as motions for summary disposition under MCR 2.116 . . .").

The next question becomes whether defendants' summary disposition constituted a timely response under our court rules. Plaintiff's original complaint, which named Keller Williams as a defendant, was filed on March 23, 2018. Generally, a "defendant must serve and file an answer or take other action permitted by law or these rules within 21 days after being served with the summons and a copy of the complaint in Michigan . . ." MCR 2.108(A)(1). Plaintiff attempted to effectuate service of the complaint against Keller Williams by certified mail, return receipt requested, sent to its business address in Texas. It appears from the record that receipt occurred on March 29, 2018. "If service of the summons and a copy of the complaint is made outside Michigan, or if the manner of service used requires the summons and a copy of the complaint to be sent by registered mail addressed to the defendant, the defendant must serve and file an answer or take other action permitted by law or these rules within 28 days after service." MCR 2.108(A)(2).[1]

However, these time limitations were modified by the effect of plaintiff's amended complaint, which was filed on April 11, 2018. See MCR 2.118(A)(1) ("A party may amend a pleading once as a matter of course within 14 days after being served with a responsive pleading by an adverse party."). Plaintiff's amended complaint superseded the original complaint and that complaint is considered abandoned or withdrawn. MCR 2.118(A)(4); *Grzesick v Cepela*, 237 Mich App 554, 562; 603 NW2d 809 (1999).

MCR 2.108(C)(3) provides as follows:

(C) Effect of Particular Motions and Amendments. When a motion or an amended pleading is filed, the time for pleading set in subrule (A) is altered as follows, unless a different time is set by the court:

* * *

(3) The response to a supplemental pleading or to a pleading amended either as of right or by leave of court must be served and filed within the time remaining for response to the original pleading or within 21 days after service of the supplemental or amended pleading, whichever period is longer.

In this case, there is a proof of service indicating that plaintiff served the amended complaint on the same day that the amended complaint was filed, April 11, 2018.[2] Thus,

---

[1] "If a rule uses the term 'registered mail', that term includes the term 'certified mail', and the term 'registered mail, return receipt requested' includes the term 'certified mail, return receipt requested'." MCR 2.105(K)(1).

[2] Defendants claim that the amended complaint was not actually served on any defendant and that defendants obtained the amended complaint directly from the trial court. However,

defendants had 21 days after April 11, which was a longer period than the time remaining for responding to the original complaint, in which to respond to the amended complaint. MCR 2.108(C)(3). Defendants, including Keller Williams, filed their motion for summary disposition on May 2, 2018, within 21 days of the date plaintiff filed his amended complaint. This constituted a satisfactory and timely response under our Court rules. MCR 2.108(A)(1) and (2); MCR 2.108(C)(3); *Huntington Nat'l Bank*, 292 Mich App at 387.

Accordingly, it was improper to enter a default against Keller Williams because it did not fail to "otherwise defend" against the action as provided by our court rules. MCR 2.603(A)(1); *Huntington Nat'l Bank*, 292 Mich App at 388 ("This Court has previously interpreted MCR 2.603(A)(1) as meaning that a party must not be defaulted if the party pleads or, as an alternative to filing a responsive pleading, otherwise defends the action."). The trial court recognized that the default was mistakenly entered and did not abuse its discretion by setting the default aside. MCR 2.603(D)(3); MCR 2.612(A)(1), (C)(1)(a).

### III. SUMMARY DISPOSITION UNDER MCR 2.116(C)(7)

Plaintiff next claims that the trial court erred in granting defendants' motion for summary disposition pursuant to MCR 2.116(C)(7).

We review a trial court's decision to grant summary disposition de novo. *Saffian v Simmons*, 477 Mich 8, 12; 727 NW2d 132 (2007). Under MCR 2.116(C)(7), a party may move for summary disposition on the ground that a claim is barred because of a release or an agreement to arbitrate. In evaluating a motion brought under subsection (C)(7), the court must consider the evidence submitted by the parties in support of or in opposition to the motion, to the extent that the content or substance would be admissible as evidence. MCR 2.116(G)(5), (6). This Court also reviews de novo the question whether a particular issue is subject to arbitration. *Altobelli v Hartmann*, 499 Mich 284, 295; 884 NW2d 537 (2016). Because "[a]rbitration is a matter of contract," we interpret an arbitration agreement according to the same legal principles applicable to contract interpretation. *Id*. (quotation marks and citation omitted). The "primary task is to ascertain the intent of the parties at the time they entered in to the agreement . . . by examining the language of the agreement according to its plain and ordinary meaning." *Id*. Similarly, "[t]he scope of a release is controlled by the intent of the parties as it is expressed in the release," and thus, we must look to the language of the release. *Gortney v Norfolk & Western R Co*, 216 Mich App 535, 540; 549 NW2d 612 (1996). If the text in the release is unambiguous, we determine the parties' intent from the language of the release itself. *Id*. We review the interpretation of contractual language de novo. *Altobelli*, 499 Mich at 295.

### A RELEASE—REALTY COMPANIES AND AGENT

---

defendants also indicated that they are not challenging the method of service on appeal. Thus, for purposes of our analysis, we simply assume service occurred on April 11, 2018.

The trial court did not err by concluding that plaintiff's claims against the realty companies and Weiger were barred by the release in the purchase agreement. As previously noted, the release clause stated

> **RELEASE**: Purchaser recognizes that Seller has provided Purchaser a required Seller's Disclosure Statement. Purchaser has been afforded the right to independent inspections of the property and Purchaser affirms that property is being purchased "AS IS" and hereby knowingly waives, releases and relinquishes any and all claims or causes of action against Keller Williams, its officers, directors, employees and independent sales associates. Purchaser and Seller recognize and agree that brokers and sales associates involved in this transaction are not parties to this Agreement. Broker and sales associates specifically disclaim any responsibility for the condition of the property or for the performance of the Agreement by the parties. Keller Williams assumes no liability for performance of any inspection or statements on Seller's disclosure form.

Plaintiff signed the purchase agreement and specifically initialed the release clause.

The validity of a release is controlled by the parties' intent. *Batshon v Mar-Que Gen Contractors, Inc*, 463 Mich 646, 649 n 4; 624 NW2d 903 (2001). "A release is valid if it is fairly and knowingly made." *Brooks v Holmes*, 163 Mich App 143, 145; 413 NW2d 688 (1987). "A release is invalid if (1) the releaser was acting under duress, (2) there was misrepresentation as to the nature of the release agreement, or (3) there was fraudulent or overreaching conduct to secure the release." *Id*.

In this case, the language of the release evidences a clear intent to waive and release "all claims or causes of action" against Weiger and the realty company defendants.[3] The release further states, "Broker and sales associates specifically disclaim any responsibility for the condition of the property . . ." The broad and inclusive language of the release evidences defendants' intent to disclaim all liability and plaintiff's intent to release the realty companies and agent from any and all claims or causes of action, arising out of the transaction and the condition of the property. This release language necessarily includes the claims asserted in plaintiff's complaint stemming from the alleged misrepresentations or omissions regarding the condition of the property. See *Dresden v Detroit Macomb Hosp Corp*, 218 Mich App 292, 297-298; 553 NW2d 387 (1996) (discussing the broad nature of release language mentioning " 'any

---

[3] Based on the previously described relationships between the realty company defendants, we conclude that they are sufficiently related to fall within the scope of the entities released in this clause. Indeed, plaintiff appears to not meaningfully distinguish between these various defendants. We also conclude that Weiger falls within the scope of this language. Plaintiff has not advanced any argument that the release would not apply to certain of these defendants even if it were considered valid. Therefore, we treat as abandoned any potential argument that the release language somehow does not apply to all of these defendants. *Houghton v Keller*, 256 Mich App 336, 339-340; 662 NW2d 854 (2003).

and all' causes of action" and concluding that it applied to bar a fraud claim); *Heritage Resources, Inc v Caterpillar Fin Servs Corp*, 284 Mich App 617, 642; 774 NW2d 332 (2009) (" '[T]here cannot be any broader classification than the word "all." In its ordinary and natural meaning, the word "all" leaves no room for exceptions.' ") (citation omitted). Accordingly, the release foreclosed plaintiff's claims against the realty companies and agent.

Plaintiff has not presented any evidence that the release was not "fairly and knowingly made," that there was a misrepresentation regarding "the *nature of the release agreement*," that there was other fraudulent conduct employed "*to secure the release*," or that he acted under duress. *Brooks*, 163 Mich App at 145 (emphasis added). Although plaintiff has made allegations that misrepresentations were made about the condition of the property, he has not made any claims, or provided any evidence, directed at showing that there were misrepresentations related to the substance or procurement of *the release itself*. The meaning and effect of the release language is also clear and understandable; it is not misleading. We note that the clause was captioned "RELEASE," putting plaintiff on clear notice regarding the release. And plaintiff does not appear to argue that he did not know or understand that he was releasing his claims against the realty companies and agent when he signed the purchase agreement. Finally, there is no indication that the release was a product of duress. To succeed on a claim of duress, plaintiff would have had to show that he was "illegally compelled or coerced to act by fear of serious injury to their persons, reputations, or fortunes." *Farm Credit Servs of Mich's Heartland, PCA v Weldon*, 232 Mich App 662, 681; 591 NW2d 438 (1998) (quotation marks and citation omitted). Plaintiff has provided no evidence that defendants engaged in such conduct to induce him to sign the release. Thus, there is no indication that the release was invalid on any of these grounds. See *Dombrowski v City of Omer*, 199 Mich App 705, 710; 502 NW2d 707 (1993) (noting that rescission of a release would be appropriate only if defendants had "fraudulently induced plaintiff into signing the document without reading it or otherwise misrepresented the contents of the document").

The trial court did not err by granting summary disposition under MCR 2.116(C)(7) in favor of the realty companies and Weiger on the ground that the claims against these defendants were barred by the valid release contained in the purchase agreement.

### B. AGREEMENT TO ARBITRATE—SELLERS

The trial court also did not err by concluding that plaintiff's claims against sellers were subject to arbitration.

"The existence of an arbitration agreement and the enforceability of its terms are judicial questions for the court, not the arbitrators." *Fromm v Meemic Ins Co*, 264 Mich App 302, 305; 690 NW2d 528 (2004); see also MCL 691.1686(2) ("The court shall decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate."). "In deciding the threshold question of whether a dispute is arbitrable, a reviewing court must avoid analyzing the substantive merits of the dispute." *Altobelli*, 499 Mich at 296. "If the dispute is arbitrable, the merits of the dispute are for the arbitrator." *Id*. (quotation marks and citation omitted). "To ascertain the arbitrability of an issue, [a] court must consider whether there is an arbitration provision in the parties' contract, whether the disputed issue is arguably within the arbitration clause, and whether the dispute is expressly exempt from arbitration by the terms of

the contract." *Fromm*, 264 Mich App at 305-306 (quotation marks and citation omitted; alteration in the original). "[A] court should not interpret a contract's language beyond determining whether arbitration applies and should not allow the parties to divide their disputes between the court and an arbitrator." *Id*. at 306. "An arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled and whether a contract containing a valid agreement to arbitrate is enforceable." MCL 691.1686(3).

In this case, as previously noted, the purchase agreement between plaintiff and sellers contained the following arbitration provision that was expressly made part of their agreement:

**ARBITRATION**:

A. Any claim of Seller or Buyer arising out of this agreement relating to the disposition of the earnest money deposit or the physical condition of the property covered by this agreement shall be arbitrated in accordance with the rules, then in effect, adopted by the American Arbitration Association. This is a voluntary agreement between the Buyer and Seller and the failure to agree to arbitrate does not affect the validity of this agreement. This agreement is made subject to and incorporates the provisions of Michigan law governing arbitration. This provision shall survive closing.

Plaintiff's claims against sellers involving the heating system and private road relate to the physical conditions of the property and thus are "arguably within the arbitration clause." *Fromm*, 264 Mich App at 305-306 (quotation marks and citation omitted). There is no indication in the language of the agreement to arbitrate that such claims are exempt from arbitration. *Id*. at 306. Therefore, plaintiff's claims must be resolved in arbitration. *Id*. To the extent that plaintiff argues that the arbitration agreement is unenforceable on the ground that the purchase agreement itself was somehow invalid, these are matters for the arbitrator. MCL 691.1686(3). The trial court did not err by concluding that plaintiff's claims against sellers were required to be resolved in arbitration.

IV. CONCLUSION

The trial court's rulings were not erroneous, and we affirm in all respects. Finally, we note that defendants have argued in their brief on appeal that these proceedings are vexatious and that we should take disciplinary action against plaintiff pursuant to MCR 7.216(C)(1). However, we decline to consider this request because defendants have not properly presented this request to this Court under MCR 7.211(C)(8).

Affirmed.

/s/ Thomas C. Cameron
/s/ Jane E. Markey
/s/ Stephen L. Borrello