*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ALLEN & ALLEN PROPERTIES, LLC,
and CURTIS SMITH,

       Plaintiffs-Appellants,

v

JASON SMITH,

       Defendant-Appellee.

UNPUBLISHED
July 28, 2022

No. 358047
Wayne Circuit Court
LC No. 20-016562-CB

Before: SHAPIRO, P.J., and RICK and GARRETT, JJ.

PER CURIAM.

The instant matter involves a contract and arbitration agreement dispute. Plaintiffs, Curtis Smith (Curtis) and Allen & Allen Properties, LLC (the Company), filed a delayed application for leave to appeal, challenging the trial court's order granting defendant, Jason Smith's, motion for summary disposition.[1] We reverse and remand.

## I. BACKGROUND

In 2004, Curtis and Howard Smith formed Allen & Allen Properties, LLC. Howard contributed $710,216, resulting in a 90% ownership of the Company, while Curtis contributed $41,560, resulting in 10% ownership. On January 1, 2010, Curtis and Howard signed an Operating Agreement to govern the Company's affairs. Section 8.12 of the Operating Agreement contained an arbitration clause, which provides, in relevant part, "Any disputes arising out of or pertaining to the interpretation of this Agreement shall be submitted to an arbitrator upon the request by any of the Members." The Operating Agreement also contained the following pertinent clauses related to new members:

---

[1] *Allen & Allen Prop, LLC v Jason Smith*, unpublished order of the Court of Appeals, entered October 13, 2021 (Docket No. 358047).

4.2 **Restrictions on Members.**  No Member, without the prior written consent of all the Members shall:

(a) Sell, assign, transfer, mortgage, or pledge any material assets of the Company;

* * *

5.1 **New Members; Substitute Members and Transferees.**  New Members may be admitted to the Company without the prior written consent of all Members.  Unless otherwise required by law, no Member has the right to sell, assign, transfer, mortgage, or pledge his Interest, or any part of his Interest, in this Company or grant the right to become a substitute member to an assignee of all or any part of his interest, except with the prior written consent of all Members, and any attempt to do so is null and void.

The Operating Agreement was allegedly amended in 2014 as a result of a handwritten memorandum signed only by Howard, which reduced Howard's ownership to 50%, increased Curtis's share to 25%, and gave defendant a 25% ownership interest.  Curtis did not sign the amendment, and he claims he was not aware of the amendment until after Howard died in August 2020.  Thereafter, defendant submitted a letter to plaintiffs claiming an ownership in the Company, and stating his intent to begin termination of the Company and liquidation of its assets.

Plaintiffs filed a complaint for declaratory judgment, which he subsequently amended, requesting the trial court to find that: (1) defendant did not have an interest in the Company; (2) Curtis, as the sole remaining member of the company, is now the only owner of 100% of the Company; and (3) an award of costs, interest, and attorney fees in favor of plaintiffs.  Defendant moved for summary disposition under MCR 2.116(C)(7), arguing that the dispute was subject to arbitration under the Operating Agreement because he was a member of the Company as evidenced by the 2014 amendment.  Plaintiffs responded, contending arbitration was inappropriate because defendant was not a party to the Operating Agreement and was not unanimously approved as a new member, and, therefore, not a member of the Company with rights under the Operating Agreement.

In an attached affidavit, Curtis explained that the correct language of section 5.1 of the Operating Agreement should state: "No new Members may be admitted to the company without the prior consent of all Members."  However, the copy submitted by defendant omitted the word "No" in the first statement sentence of section 5.1.  Curtis argued that this was either a typographical error or the result of altering the sentence.  Subsequently, plaintiffs argued that the error in section 5.1 was actually an intentional and fraudulent alteration of the Operating Agreement.

The trial court found there was a question regarding whether defendant was a legitimate party to the Operating Agreement.  However, the court granted defendant's motion and stated that the remaining questions should be decided in arbitration concluding, "The question of

membership . . . is simply a question for the arbitrator." This Court granted plaintiffs' delayed application for leave to appeal.[2]

## II. STANDARD OF REVIEW

Summary disposition is proper under MCR 2.116(C)(7) when a claim is barred because of an agreement to arbitrate. *Tinsley v Yatooma*, 333 Mich App 257, 261; 964 NW2d 45 (2020). A trial court's decision on a motion for summary disposition is reviewed de novo. *Id*. "In reviewing a motion under MCR 2.116(C)(7), this Court accepts as true the plaintiff's well-pleaded allegations and construes them in the plaintiff's favor." *Watts v Polaczyk*, 242 Mich App 600, 603; 619 NW2d 714 (2000). This Court must "consider the pleadings, affidavits, depositions, admissions, and documentary evidence filed or submitted by the parties to determine whether a genuine issue of material fact exists." *Id*. "Whether a claim is subject to arbitration is also reviewed de novo, as is the construction of contractual language." *Tinsley*, 333 Mich App at 261.

## III. LAW AND ANALYSIS

Plaintiffs argue that the trial court committed several errors. First, it erred when it failed to determine whether defendant was a party to the Operating Agreement, which was essential to determining the issue of arbitrability. Second, plaintiffs maintain, the trial court erroneously concluded that the issue of whether there was an enforceable arbitration agreement between the parties was a question for the arbitrator to decide. We agree.

Arbitration proceedings in Michigan are governed by statute and court rule. Michigan's Uniform Arbitration Act, MCL 691.1681 *et seq*., outlines different responsibilities of the trial court and the arbitrator in an arbitration action. MCL 691.1686 provides, in relevant part:

> (2) The court shall decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate.

> (3) An arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled and whether a contract containing a valid agreement to arbitrate is enforceable. [MCL 691.1686(2) and (3).]

---

[2] Plaintiffs attempted to appeal the trial court's order once before. This Court dismissed the claim of appeal for lack of jurisdiction because the May 2, 2021 order appealed was not a final order. Rather, the final order was entered on April 9, 2021, making the appeal not timely filed within 21 days of the order. *Allen & Allen Properties LLC v Jason Smith*, unpublished order of the Court of Appeals, entered May 25, 2021 (Docket No. 357237). This Court also denied the plaintiffs' subsequent request for reconsideration. *Allen & Allen Properties LLC v Jason Smith*, unpublished order of the Court of Appeals, entered July 21, 2021 (Docket No. 357237).

"Arbitration is a matter of contract." *Altobelli v Hartmann*, 499 Mich 284, 295; 884 NW2d 537 (2016) (quotation marks and citation omitted). "[A] valid agreement must exist for arbitration to be binding." *Ferndale v Florence Cement Co*, 269 Mich App 452, 460; 712 NW2d 522 (2006). As recognized by our Supreme Court, "[a] party cannot be required to arbitrate an issue which [it] has not agreed to submit to arbitration." *Lichon v Morse*, 507 Mich 424, 437; 968 NW2d 461 (2021) (quotation marks, citation, and alterations omitted; alterations in original). "[W]hen interpreting an arbitration agreement, we apply the same legal principles that govern contract interpretation." *Id*. (quotation marks and citation omitted). When interpreting a contract, our goal is to "ascertain the intent of the parties at the time they entered into the agreement." *Id*. (quotation marks and citation omitted).

> The general policy of this State is favorable to arbitration. The burden is on the party seeking to avoid the agreement, not the party seeking to enforce the agreement. In deciding the threshold question of whether a dispute is arbitrable, a reviewing court must avoid analyzing the substantive merits of the dispute. If the dispute is arbitrable, the merits of the dispute are for the arbitrator. [*Altobelli*, 499 Mich at 295-296 (quotation marks and citations omitted).]

Plaintiffs argue the trial court did not find that defendant was a party to the Operating Agreement, which was essential to determining the issue of arbitrability. We agree.

In the instant case, it is undisputed that the Operating Agreement contains an arbitration clause. However, because defendant's membership in the LLC is in doubt, as admitted by the trial court, the enforceability of the arbitration clause as to the parties of this dispute is still in question. "The existence of an arbitration agreement and the enforceability of its terms are judicial questions for the court, not the arbitrators." *Fromm v Meemic Ins Co*, 264 Mich App 302, 305; 690 NW2d 528 (2004). Therefore, whether there exists an enforceable arbitration agreement between parties is a question that must be decided by the trial court, not an arbitrator. *Id*. If defendant has a right to enforce the arbitration clause in the Operating Agreement, it can only be because he is a member of the LLC, and thus is bound by the requirements in the Operating Agreement. Consequently, the trial court erred when it concluded that "[t]he question of [defendant's] membership" was a question for the arbitrator.

Further, the trial court acknowledged that there were multiple questions relating to defendant's membership status. It is undisputed that defendant did not sign the Operating Agreement. Therefore, defendant only has rights if he is found to be a member of the Company as a result of Howard's 2014 handwritten amendment. Plaintiffs argued that the 2014 amendment did not validly transfer membership to defendant because it lacked written consent from all members, and according to section 7.2 of the Operating Agreement, it was impossible for defendant to have been assigned a share of the profits without becoming a member of the Company. There is also a question whether § 5.1 of the Operating Agreement contained a typographical error or was fraudulently altered by defendant to give him rights to the Company. See *Jozwiak v Northern Mich Hosps, Inc*, 207 Mich App 161, 166; 524 NW2d 250 (1994) ("Evidence of fraud or mistake could rebut the statutory presumption of validity" and a factual dispute regarding fraud or mistake "bears directly on the validity of the arbitration agreement.").

We conclude that a question of fact remains as to whether defendant has the right to invoke arbitration and that the trial court erred when it granted defendant's motion for summary disposition. Because there exists a factual dispute bearing on the validity of the arbitration agreement, we remand to the trial court to hold an evidentiary hearing. See *id*. Although the validity of the arbitration clause itself is not in question in the instant case, multiple questions arise as to whether defendant is a proper party to the Operating Agreement, and, thus, whether defendant can enforce the arbitration clause in the instant dispute. Our analysis need not go any further because this Court must "avoid analyzing the substantive merits of the dispute." *Altobelli*, 499 Mich at 296.

Reversed and remanded. We do not retain jurisdiction.

/s/ Douglas B. Shapiro
/s/ Michelle M. Rick
/s/ Kristina Robinson Garrett